**Opinion issued May 8, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00277-CV

————————————

**CAROLYN CALKINS JAMES, INDIVIDUALLY AND AS NEXT FRIEND OF HER ELDERLY MOTHER, MARY OLIVE CALKINS, Appellant**

**V.**

**HONORABLE OLEN UNDERWOOD, HONORABLE PATRICK SEBESTA AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND, RICHARD STEPHEN CALKINS AS AGENT IN FACT FOR MARY OLIVE CALKINS AND MICHAEL EASTON, INDIVIDUALLY AND AS ASSIGNEE OF RICHARD STEPHEN CALKINS, Appellees**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-51725**

---

## O P I N I O N

Carolyn James and her brother Richard Steven Calkins are in a legal dispute over who has the right to manage the assets of their mother, Mary Calkins. Their

controversy has spawned multiple lawsuits filed in various district and probate courts in at least two counties resulting in no less than 11 issued appellate decisions—thus far—from the First and Fourteenth Courts of Appeals.[1] Michael Easton, an individual who is not related to James or Calkins, has repeatedly intervened, sued and been sued in the dispute between the siblings.[2]

In this latest iteration, James sued two judges who have presided over aspects of her on-going legal dispute with Calkins and Easton: Judge Underwood and Judge Sebesta. She also sued Judge Sebesta's surety, Fidelity and Deposit Company of Maryland. The judges filed a motion to dismiss James's claims based on the doctrines of judicial and sovereign immunity. Fidelity also filed a motion to dismiss based on its defenses that James lacked standing and capacity to sue and that the statute James relied on as an exception to judicial immunity did not apply. The trial court granted the motions to dismiss.

Michael Easton and James's brother, Calkins, intervened in the suit after the judges were dismissed but before Fidelity's dismissal. They requested sanctions

---

[1]     See Nos. 01-12-00445-CV, 01-11-00731-CV, 01-11-00734-CV, 01-11-00732-CV, 01-11-00733-CV, 14-11-00053-CV, 01-12-00036-CV, 14-10-00471-CV, 01-10-00751-CV, 01-10-00574-CV, 01-10-00413-CV, and 01-09-00623-CV.

[2]     See, e.g., James v. Easton, 368 S.W.3d 799 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (James appealed dismissal of temporary injunction suit against Easton in which Easton was alleged to have written emails to James with pointed references to violent movies that insinuating threats of physical harm).

2

against James and her attorneys. After all defendants had been dismissed, Easton and James filed a notice of non-suit, allowing the judgment to become final.

James timely appealed the trial court's rulings granting dismissal of James's claims against all defendants. She asserts that the trial court erred in four regards: (1) denying James's special exception to the judges' and Fidelity's motions to dismiss; (2) granting dismissal to the judges on the theory of judicial immunity; (3) failing to permit a claim against Judge Sebesta to the extent of the judge's surety bond; and (4) granting dismissal to Fidelity on the theories of lack of standing and lack of capacity.

We affirm.

## Background

The underlying facts have been detailed in earlier appellate opinions;[3] therefore, only those facts necessary for the resolution of the issues currently before the Court will be included here.[4]

---

[3] *See, e.g., In re Estate of Calkins*, No. 01-11-00731-CV, 2013 WL 4507923 (Tex. App.—Houston [1st Dist.] Aug. 22, 2013, no pet.).

[4] Many of the factual assertions contained in James's pleadings do not have accompanying, supporting documentation in the record. These omissions may be the result of James pursing a lawsuit about other lawsuits without the records from those cases included in her appeal. As a result, some of the documents discussed in the parties' briefs are not part of the record, including orders issued by the two judges sued by James and by other probate judges. Because we take as true the factual assertions contained in a party's pleading that has been dismissed for lack of jurisdiction, we provide the factual account offered by James. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).

James initiated proceedings to have a guardian appointed for her mother in 2008. Calkins fought the appointment. Easton, alleged to be the legal assistant of the attorney representing Calkins, intervened "pro se." Both Calkins and Easton sought to recuse the judge assigned to the probate case, Judge Mike Wood. Regional Presiding Judge Olen Underwood assigned judges to hear that and subsequent recusal motions filed by Calkins and Easton. Easton challenged—on procedural grounds—the orders denying recusal and, eventually, Judge Underwood issued an order granting recusal of Judge Wood. Subsequently, eight judges were assigned the probate matter, each of whom either were recused or informed Judge Underwood that they were "withdrawing or resigning from the cases." Judge Sebesta was the ninth judge assigned to the probate case. Fidelity and Deposit Company of Maryland is the surety for Judge Sebesta.

Judge Sebesta entered an order voiding prior orders, including the appointment of a temporary guardian over James's mother, based on a lack of in personam jurisdiction over the proposed ward, whom James had not properly served. James filed motions seeking to require Calkins and Easton to answer discovery in the probate matter, to dismiss Easton and Calkins's opposition to appointment of a guardian, and to require an accounting of funds removed from her mother's estate.

James filed suit against Judge Underwood and Judge Sebesta, alleging "constitutional due process violations." She included Fidelity in her suit, as surety for Judge Sebesta. James's petition asserts that she has sued in dual capacities: individually and as next friend of her mother.

All defendants answered and filed motions to dismiss. The judges' motion to dismiss was granted. Less than one month later, Easton and Calkins intervened in the case, requesting sanctions against James and her attorneys. A couple of months later, the trial court granted Fidelity's motion to dismiss. Easton and Calkins nonsuited their intervention. James appealed the dismissal of her claims against Judge Underwood, Judge Sebesta, and Fidelity.

## Subject Matter Jurisdiction

### A.    Standard of Review

Subject-matter jurisdiction is essential for a court to have the authority to resolve a case. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638–39 (Tex. 1999); *Mann v. Gabriel*, No. 11-10-00265-CV, 2012 WL 2865811, at *2 (Tex. App.—Eastland July 12, 2012, no pet.) (mem. op.). Whether a trial court has subject-matter jurisdiction is a threshold inquiry that can be addressed by the court sua sponte and at any time. *See In re G.S.G.,* 145 S.W.3d 351, 353 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex. 1993)); *Mann*, 2012 WL 2865811, at *2. Whether

the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The determination of whether a trial court has subject-matter jurisdiction begins with the pleadings. *Miranda*, 133 S.W.3d at 226. The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the pleader's factual allegations. *See Miranda*, 133 S.W.3d at 226; *City of Fort Worth v. Crockett*, 142 S.W.3d 550, 552 (Tex. App.—Fort Worth 2004, pet. denied). When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable jurisdictional defects, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *See Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 804–05 (Tex. 1989); *Tex. Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9–10 (Tex. 1974). On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *See Peek*, 779 S.W.2d at 804–05; *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

6

## B. Judicial Immunity

In her second issue, James argues that the trial court erred by dismissing her claims against Judges Underwood and Sebesta on the grounds of judicial immunity.

The judges' motion to dismiss alleged both judicial immunity and sovereign immunity. The order granting dismissal did not specify the basis for dismissal. If dismissal was proper under either theory, the trial court's judgment will be affirmed. *See Guar. Cnty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986); *In re Estate of Hutchins*, 391 S.W.3d 578, 585 (Tex. App.—Dallas 2012, no pet.) Because we conclude that dismissal based on judicial immunity was proper, we do not reach the issue of sovereign immunity.

Immunity from suit deprives a trial court of subject-matter jurisdiction. *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex. 2006). The Supreme Court has stated repeatedly that "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871); *Mireles v. Waco*, 502 U.S. 9, 10, 112 S. Ct. 286, 287 (1991); *Stump v. Sparkman*, 435 U.S. 349, 355, 98 S. Ct. 1099, 1104 (1978); *see also Dallas Cnty. v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002);

*Twilligear v. Carrell*, 148 S.W.3d 502, 504 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Thus, judges are afforded immunity from suit for their judicial conduct. *See Mireles*, 502 U.S. at 10, 112 S. Ct. at 287.

Judicial immunity provides immunity from suit, not just from the ultimate assessment of damages. *See id.*, 502 U.S. at 11, 112 S. Ct. at 288; *Halsey*, 87 S.W.3d at 554. Accordingly, allegations of bad faith or malice will not overcome immunity, given that such allegations would require discovery and possibly trial to resolve. *See Mireles*, 502 U.S. at 11, 112 S. Ct. at 288; *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 1217–18 (1967). "Judges enjoy absolute judicial immunity from liability for judicial acts, no matter how erroneous the act or how evil the motive, unless the act is performed in the clear absence of all jurisdiction." *Alpert v. Gerstner*, 232 S.W.3d 117, 127 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (quoting *City of Houston v. W. Capital Fin. Servs. Corp.*, 961 S.W.2d 687, 689 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.)).

There are two sets of circumstances in which immunity is overcome. First, a judge is not immune from liability for nonjudicial actions, described as actions not taken in the judge's judicial capacity. *See Mireles*, 502 U.S. at 11, 112 S. Ct. at 288; *Twilligear*, 148 S.W.3d at 504. Second, a judge is not immune from actions, even those judicial in nature, if taken in the "complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12, 112 S. Ct. at 288.

8

### 1. Judicial versus nonjudicial acts

The factors we consider in determining whether a judge's act is "judicial" are whether (1) the act complained of is one normally performed by a judge, (2) the act occurred in the courtroom or an appropriate adjunct such as the judge's chambers, (3) the controversy centered around a case pending before the judge, and (4) the act arose out of an exchange with the judge in the judge's judicial capacity. *Bradt v. West*, 892 S.W.2d 56, 67 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see also Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). These factors are broadly construed in favor of immunity. *Bradt*, 892 S.W.2d at 67. Not all factors must be met for immunity to exist. *Id.* In some circumstances, immunity may exist even if only one factor is met. *Id.* (citing *Adams v. McIlhany*, 764 F.2d 294, 297 n.2 (5th Cir. 1985). The factors are not required to be given equal weight; rather, they are weighted according to the facts of the particular case. *Bradt*, 892 S.W.2d at 67.

In considering whether the act complained of is one normally performed by a judge, we ask whether the action is a "function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 11, 112 S. Ct. 288; *Twilligear*, 148 S.W.3d at 504. The relevant inquiry is the "nature" and "function" of the act, not the "act itself." *Mireles*, 502 U.S. at 13, 112 S. Ct. at 288; *Stump*, 435 U.S. at 362, 98 S. Ct.

9

at 1107. This distinction is necessary, otherwise any act characterized as improper would be deemed nonjudicial because "an improper or erroneous act cannot be said to be normally performed by a judge." *Mireles*, 502 U.S. at 12, 112 S. Ct. at 288 (concluding that judge claiming judicial immunity performed judicial act when he directed police to bring counsel in pending case before court, even though plaintiff alleged that judge instructed police to use excessive force which would be outside his authority to do).

In *Twilligear*, our sister court concluded that a judge accused of "negligence and gross negligence in failing to adequately oversee expenditures from a guardianship account" was exercising judicial action because "the actions required of probate judges under section 671 of the Probate Code are directly related to conducting the guardianship proceedings pending in their courts . . . [and thus are] protected by judicial immunity." *Twilligear*, 148 S.W.3d at 505. Thus, if the nature of the action taken by the judge or the function he performed through that action is one "normally performed by a judge" and the complaining party "dealt with the judge in his judicial capacity," then the act is considered judicial. *See Mireles*, 502 U.S. at 11–12, 112 S. Ct. at 288; *Twilligear*, 148 S.W.3d at 504.

James's petition contends that Judge Underwood was required to sever a claim in intervention brought by Easton against Judge Wood, who was presiding over the underlying probate matter at that time. Judge Underwood's refusal to

effectuate that severance forms the basis of James's contention that Judge Sebesta had no jurisdiction to subsequently preside over the probate matter. James's specific contention is that Judge Sebesta "continue[d] to ignore the fact that he ha[d] no jurisdiction because [Judge] Underwood never had jurisdiction to appoint [Judge] Sebesta to preside over the subject guardianship and trust cases because [the intervention] was statutorily severed." She further complains of Judge Underwood's "wrongful recusal of the originally assigned Judge Mike Wood" and appointment of a replacement, contending that a regional presiding judge may not grant a motion to recuse that has already been denied by another judge assigned the motion.

We apply the *Bradt* factors to determine whether these actions are judicial or nonjudicial, noting that nonjudicial acts are outside the protection of judicial immunity. First, the act of ruling on motions to recuse and replacing a disqualified judge with a replacement judge are actions normally taken by a presiding judge. TEX. GOV'T CODE ANN. §§ 25.002201, 25.00255 (West Supp. 2013) (detailing method for recusal and assignment of replacement judge in statutory probate courts). Additionally, the act of presiding over a probate matter is an action normally taken by a probate judge. TEX. GOV'T CODE ANN. § 25.0026 (West 2004) (discussing statutory probate court judges' powers and duties). Thus, the first

factor supports the conclusion that the actions on which James complains were judicial.

James's characterization of these acts as neglectful, or even malicious, does not convert them to nonjudicial acts. *See Mireles*, 502 U.S. at 11, 112 S. Ct. at 288 (instructing that proper analysis is whether action is "function normally performed by a judge," not whether specific action taken was permitted and without regard to judge's intent); *Pierson*, 386 U.S. at 554, 87 S. Ct. at 1218 ("It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.")

The two judges' actions occurred in court; therefore, the second factor also supports a finding that the judges' actions were judicial in nature. *Bradt*, 892 S.W.2d at 67.

The third factor is whether the controversy centered around a case pending before the judge. The underlying probate matter was initiated by James and assigned to a large number of probate judges. The rulings that James contends were erroneous and led to this suit against the judges all occurred while the probate

matter was pending in the probate courts. Accordingly, this factor supports the conclusion that the judges' actions were judicial. *See id.* To the extent James contends that the judges were not the proper judicial actors to issue a ruling in her mother's probate matter due to procedural errors, that argument does not make the actions less judicial. *See id.* at 68 (holding that judge had jurisdiction, for judicial immunity purposes, to sign an order even if that order would be determined void due to pending motion to recuse judge).

The final factor is whether the act arose out of an exchange with the judge in the judge's judicial capacity. While James disputes that the judges should have been the ones to issue ruling in the case, the parties appeared before the judges and interacted with them in the judges' judicial capacity and not in any alternative capacity. The judges received motions and evidence and issued rulings on those motions. They acted in a judicial capacity in doing so, whether their rulings were correct or not. *See Mireles*, 502 U.S. at 13, 112 S. Ct. at 288. Accordingly, this last factor supports the conclusion that the judges' actions were judicial. *Bradt*, 892 S.W.2d at 67.

Having concluded that the judges' acts were judicial in nature, we next consider whether the judges acted in a "complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12, 112 S. Ct. at 288; *Bradt*, 892 S.W.2d at 68.

## *2.    Complete absence of all jurisdiction

To overcome judicial immunity, the act must be either nonjudicial, as discussed above, or have occurred in a complete absence of all jurisdiction. *Bradt*, 892 S.W.2d at 67. In *Bradt*, a litigant sued a state district judge, arguing that judicial immunity did not attach because there was a recusal motion pending against the judge at the time. This court rejected the argument, noting that the term "jurisdiction" has a different meaning in the judicial-immunity context. *Id.* at 67–68. "Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Id.* at 68 (quoting *Malina,* 994 F.2d at 1125); *accord Harris v. Deveaux,* 780 F.2d 911, 916 (11th Cir. 1986) (holding that judge acts in "clear absence of all jurisdiction" only if judge "completely lacks subject matter jurisdiction").

"In determining whether an act was clearly outside a judge's jurisdiction for judicial immunity purposes, the focus is not on whether the judge's specific act was proper or improper, but on whether the judge had the jurisdiction necessary to perform an act of that kind in the case." *Bradt*, 892 S.W.2d at 68; *Mireles,* 502 U.S. at 13, 112 S. Ct. at 288 (involving judge alleged to have authorized police to use excessive force in bringing attorney to judge's courtroom and concluding that judge had jurisdiction to secure attorneys' presence before him, even if he did not have legal authority to authorize excessive force; therefore, judge acted within

14

jurisdiction); *Malina*, 994 F.2d at 1124 (holding that judge had power to cite for contempt and to sentence; therefore, judge who cited motorist for contempt and sentenced him to jail acted within his jurisdiction for judicial immunity purposes, even though judge improperly stopped motorist himself, privately used officer to unofficially "summon" motorist to court, and charged motorist himself—none of which was permissible); *Holloway v. Walker,* 765 F.2d 517, 523 (5th Cir. 1985) (where judge was alleged to have committed many illegal acts from bench, but there was "no question that he was generally empowered to conduct proceedings of the sort he [was] conduct[ing] at the time he allegedly committed illegal acts, acts were within his jurisdiction for judicial immunity purposes).

Probate judges have jurisdiction to preside over probate cases, which is what Judge Sebesta had been doing at the point that his actions became, in James's view, actionable. TEX. GOV'T CODE ANN. § 25.0026. Further, administrative judges, such as Judge Underwood, have the authority to assign matters to judges within their region, rule on motions to recuse, and to effectuate recusal transfers. TEX. GOV'T CODE ANN. §§ 25.002201, 25.00255. Accordingly, both of these judges had jurisdiction to conduct proceedings of the sort that are the basis of James's complaint.

Importantly, immunity is not lost based on an allegation that the action taken had procedural errors, even "grave" ones. *See Bradt*, 892 S.W.2d at 68 (holding

15

that judge had jurisdiction, for judicial immunity purposes, to sign order even if that order would be determined void because motion to recuse judge was pending); *see also Stump v. Skarkman*, 435 U.S. 349, 359, 98 S. Ct. 1099, 1106 (1978).

In *Stump*, a judge was sued based on an allegation that he authorized the sterilization of a 15-year-old girl without affording the child any notice or other procedural due process. *See id.*, 435 U.S. at 353–54, 98 S. Ct. at 1103–04. After the judge granted the motion filed by the child's mother, the mother had the sterilization procedure performed all the while assuring the child that she was having her appendix removed. *Id.* After the child reached adulthood and discovered the true nature of the surgery, she sued, arguing that judicial immunity did not apply because the judge's act of approving sterilization without notice or hearing was outside his jurisdiction. *See id.*, 435 U.S. at 360, 98 S. Ct. at 1106. The Supreme Court disagreed, explaining that immunity attaches even if a judge's action in exercising his authority is flawed in substance or procedure. *See id.*, 435 U.S. at 359, 98 S. Ct. at 1106 (stating that erroneous exercise of court's jurisdiction may affect validity of action taken but does not make act any less "judicial"). In support of its conclusion, the Court noted that the proper ruling if sterilization was improper would have been to deny the motion rather to dismiss it for lack of jurisdiction. *See id.*, 435 U.S. at 359, 98 S. Ct. at 1106; *see also In re J.B.H.*, No. 14-05-00745-CV, 2006 WL 2254130, *2 (Tex. App.—Houston [14th Dist.] Aug.

16

8, 2006, pet. denied) (mem. op.) (affirming dismissal of claims against judge who had judicial immunity regarding order in guardianship proceedings).

Thus, the question is not whether Judge Underwood acted improperly when he ruled on a motion to recuse or assigned a probate matter to a judge or whether Judge Sebesta acted improperly when he presided over the probate matter assigned to him, allegedly without authority to act. The question is whether they had the necessary jurisdiction to take that type of action, i.e., rule on a motion to recuse or preside over a guardianship matter. They did.

Accordingly, we overrule issue two.

## C.    Liability under statutory exception to probate judge's immunity

In her third and fourth issues, James contends that the trial court erred by granting the motion to dismiss filed by Judge Sebesta's surety, Fidelity, because a statutory exception to judicial immunity applies. James argues that, even if Judge Sebesta has broad judicial immunity, his surety can be liable up to the amount of Judge Sebesta's statutory bond through a limited exception to judicial immunity found in the Texas Estates Code. TEX. EST. CODE ANN. § 1201.003 (West 2014) (effective Jan. 1, 2014) (formerly codified as TEX. PROBATE CODE ANN. § 671(d) (West 2003)).

We have already concluded that judicial immunity applies to the types of actions taken by Judges Underwood and Sebesta in this case. James's effort to

17

invoke a statutory exception to broad judicial immunity is an attempt to establish subject matter jurisdiction. Whether a trial court has subject-matter jurisdiction is a threshold inquiry that can be addressed by the court sua sponte and at any time. *See In re G.S.G.,* 145 S.W.3d 351, 353 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex. 1993)).

To fall within a statutorily-created exception to judicial immunity, a plaintiff must plead facts establishing the applicability of that provision; otherwise, courts have no subject matter jurisdiction over a plaintiff's claims against a judge for judicial acts. *See Miranda*, 133 S.W.3d at 226 (determination of whether trial court has subject-matter jurisdiction begins with plaintiff's pleading); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (stating that plaintiff has burden to plead facts affirmatively showing that trial court has jurisdiction).

James argues that section 671 of the Texas Probate Code waives Judge Sebesta's judicial immunity because the express terms of the statute places duties on the probate judge that, if ignored, create liability. *See Twilligear*, 148 S.W.3d at 505 (holding that "judges have no liability for failing to perform their duties under section 671 beyond whatever liability can be found, if any, on their bonds, as expressly provided in that section.")  Fidelity's position is that its principal, Judge

Sebesta, could not be liable to James under section 671 because those duties are inapplicable given that no guardian was appointed.

Section 1201.003 of the Texas Estates Code, which is former section 671(d) of the Probate Code, states that "[a] judge is liable on the judge's bond to those damaged if damage or loss results to a guardianship or ward because of the gross neglect of the judge to use reasonable diligence *in the performance of the judge's duty under this subchapter*." TEX. EST. CODE ANN. § 1201.003 (emphasis added). This provision provides a limited waiver of judicial immunity, allowing recovery for losses directly tied to the judge's duties under the subchapter. Those duties include the use of reasonable diligence to determine whether an appointed guardian is performing the required duties, to at least annually examine the well-being of each ward and the solvency of the appointed guardian's bond, to require new bonds from appointed guardians when necessary, and to request the production of identifying information. *See* TEX. EST. CODE ANN. § 1201.001–.004 (West 2014) (formerly TEX. PROB. CODE ANN. § 671(a–e) (West 2003)).

James repeatedly asserts in her pleading that Judge Sebesta had no jurisdiction to manage a guardianship over her mother. "Carolyn maintains that Defendants Underwood and Sebesta have never had jurisdiction to preside over the subject Calkins's guardianship and trust cases and requests [the trial court to] sign and cause to be entered a Declaratory Judgment, that Defendants Underwood and

19

Sebesta never had jurisdiction over the Calkins guardianship and trust cases, that all of Defendants Underwood's and Sebesta's rulings and signed orders therein are void as a matter of law and [award cost and fees]."

The trial court confirmed at the hearing on Fidelity's motion to dismiss that the order appointing a temporary guardian had been declared void, leaving no recognized guardian over James's mother. At that hearing, the trial court asked questions of the attorney ad litem for James's mother, who confirmed that the original order appointing a temporary guardian for James's mother had been voided by Judge Sebesta because the court lacked in personam jurisdiction over the proposed ward and that no judge had appointed a guardian for her following the voiding of the original appointment. No party disputed those assertions. Thus the parties agree that Judge Sebesta did not recognize an existing guardianship over James's mother.

To the extent any individual has a claim for damages arising from a probate judge's neglectful management of a guardianship or a ward, the claim comes within the subject matter jurisdiction of the courts only if those statutory duties have attached. *See* TEX. EST. CODE ANN. § 1201.003 (specifying that liability is limited to neglectful exercise of duties imposed by that subchapter). Without a guardian to manage or with whom to interact to fulfill any statutorily-created duties, Judge Sebesta could not have failed to fulfill the statutory duties. *See*

20

*Twilligear*, 148 S.W.3d at 505 (holding that probate judges have no liability for failing to perform their duties beyond whatever liability can be found for violation of duties imposed within section 671).

If a party cannot invoke a statutorily-created exception to judicial immunity, a trial court has no subject matter jurisdiction where judicial immunity would otherwise apply. Accordingly, we conclude that James failed to meet her burden to demonstrate subject matter jurisdiction over her claims against Fidelity. We overrule James's third and fourth issues.

## Special Exceptions

In her first issue, James contends that the trial court erred in denying her special exceptions to the judges' motion to dismiss and to Fidelity's motion to dismiss.

### A. Standard of review

Special exceptions may be used to challenge the sufficiency of a pleading. TEX. R. CIV. P. 91; *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). The purpose of a special exception is to compel the clarification of the opposing party's pleading when that pleading is not sufficiently specific or fails to plead a cause of action. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). A trial court has broad discretion in ruling on special exceptions. *See id.* A trial court's ruling will be reversed only if there has been an abuse of discretion. *See Aldous v.*

*Bruss*, 405 S.W.3d 847, 857 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Pleadings are liberally construed, but special exceptions are appropriate when a pleading does not meet the threshold of "fair notice" of the pleader's contentions. *See id.*

James specially excepted to both motions to dismiss. We turn first to the judges' motion.

## B. Special exceptions to judges' motion to dismiss

The judges' motion to dismiss alleges that James is suing them for actions taken in their judicial capacity based on rulings they have made in the underlying probate case, entitling them to judicial and sovereign immunity. Because we have already concluded that judicial immunity applies, making other defensive theories moot, we will limit our analysis of the special exceptions to that particular affirmative defense.

The judges' judicial immunity defense challenges the trial court's subject matter jurisdiction. Whether a court has subject matter jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226. Whether a plaintiff has met her burden to allege facts that affirmatively demonstrate a trial court's subject matter jurisdiction is also a question of law. *See id.* The burden assigned the judges in raising this defensive matter was simply to give fair notice of their claim of judicial immunity. TEX. R. CIV. P. 45, 91. The judges' motion to dismiss adequately met that burden.

22

The judges had no burden to allege facts in support of their affirmative defense because judicial immunity is analyzed first by reviewing the facts alleged in the plaintiff's pleading—not the judge's answer or motion. *See Miranda*, 133 S.W.3d at 226. James may not use the special exceptions procedure to force opposing party judges to marshal evidence in support of their defensive claim; instead, it was James's burden to plead facts to invoke the trial court's subject matter jurisdiction. *See id.* Because the factual allegations contained in James's pleading negate subject matter jurisdiction, we conclude that the trial court did not abuse its discretion by denying James's special exceptions to the assertion of judicial immunity in the judges' motion to dismiss.

## C.     Special exceptions to Fidelity's motion to dismiss

Fidelity's motion to dismiss alleged judicial and sovereign immunity of its principal, Judge Sebesta. James filed special exceptions to Fidelity's motion to dismiss, contending that Fidelity could not adopt by reference assertions in Calkins's court filings, noting Calkins's self-designation as a "non-party." *See* TEX. R. CIV. P. 58 (permitting adoption by reference of statements in pleadings). James further argued that Fidelity's assertions contained in its motion to dismiss were conclusory and did not give James fair notice of the basis for dismissal.

Fidelity filed a supplement to its motion to dismiss, arguing that dismissal is appropriate because a surety cannot be liable on a bond issued to cover liability

23

under section 671 of the Probate Code when the plaintiff affirmatively pleads that the probate judge being sued had no jurisdiction. TEX. PROB. CODE ANN. § 671 (West 2003) (repealed and currently codified as TEX. EST. CODE ANN. § 1201.001–.004 (West 2014) (effective Jan. 1, 2014)). The trial court subsequently denied James's special exceptions to Fidelity's motion to dismiss.

As with the judges' motion to dismiss, James has wrongly assigned the burden of proving or disproving jurisdiction to her opposing party. The pleader is required to allege facts that affirmatively demonstrate the court's jurisdiction to hear a case. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446. It was not Fidelity's burden to plead specific facts that would disprove subject matter jurisdiction. James, as the plaintiff, had the initial burden of alleging facts and framing legal arguments that would affirmatively demonstrate the trial court's jurisdiction to hear her claims. *Miranda*, 133 S.W.3d at 225–26 (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). Unsupported legal conclusions do not suffice. *See Creedmoor–Maha Water Supply Corp. v. Tex. Comm'n on Envt'l Quality,* 307 S.W.3d 505, 515–16 & nn. 7 & 8 (Tex. App.—Austin 2010, no pet.).

When necessary, we may consider evidence that the parties have submitted to resolve jurisdictional issues, but we need not do so when subject matter jurisdiction is negated by the allegations in the plaintiff's pleading. *See Bland Indep. Sch. Dist.,* 34 S.W.3d at 555 (stating that, when necessary, courts may

24

consider evidence beyond pleadings to decide subject matter jurisdiction); *see also Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 170–71 (Tex. App.—Austin 2013, no pet.) (permitting grant of plea to jurisdiction—when pleadings affirmatively negate jurisdiction—without affording plaintiff opportunity to amend).

Because subject matter jurisdiction was negated through review of James's pleading, the trial court did not need to rely on non-party factual assertions to decide the issue of subject matter jurisdiction. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 555 (stating that courts may consider evidence beyond pleadings to decide subject matter jurisdiction, if necessary). Further, Fidelity had no burden to produce evidence in support of its defense or to provide James a detailed explanation of how it negated subject matter jurisdiction. Instead, under rule 45, Fidelity's pleading was adequate if it gave James fair notice of its allegation. TEX. R. CIV. P. 45. We conclude that it did. Accordingly, the trial court did not err in denying James's special exceptions to Fidelity's motion to dismiss.

Having concluded that the trial court did not err in denying James's special exceptions to the motions to dismiss, we overrule issue one.

## Conclusion

We affirm the trial court's judgment. We dismiss all pending motions as moot.

25

PER CURIAM

Panel consists of Justices Keyes, Bland, and Brown.