

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| § | | |
| KAREN SPEASE AND | § | No. 08-14-00065-CV |
| CRAIG SPEASE, | § | |
| | | Appeal from |
| Appellants, | § | |
| | | 327th District Court |
| v. | § | |
| | | of El Paso County, Texas |
| THE HONORABLE KATHLEEN | § | |
| OLIVARES, JUDGE OF THE 205TH | | (TC # 2014DCV0050) |
| DISTRICT COURT OF EL PASO | § | |
| COUNTY, TEXAS, | | |
| | § | |
| Appellee. | | |

## **O P I N I O N**

Karen Spease and Craig Spease, Appellants, filed suit against several defendants, including the Honorable Kathleen Olivares, Judge of the 205th District Court of El Paso County, Texas. This civil suit arises out of Appellants' detention at the Sierra Blanca checkpoint by federal agents, their later indictment on State charges for possession of marijuana, and the eventual dismissal of those charges in a case or cases pending before Judge Olivares. In this appeal, we review the trial court's decision to grant a plea to the jurisdiction with regard to Judge Olivares and dismissal of the claims against her. For the reasons noted below, we affirm.

## FACTUAL SUMMARY

The trial court granted Judge Olivares's motion to dismiss while Appellants' "Second Amended Verified Petition for Declaratory Judgment, Injunctive Relief and Damages" (the Petition) was on file. We summarize the factual allegations as relevant to this appeal from that pleading. Appellants generally allege that on July 9, 2010, while traveling from California to Houston, they were detained at the Customs and Border Protection checkpoint located just outside Sierra Blanca, Texas. They were informed that a drug sniffing dog had alerted on their vehicle. They were apparently detained, but contend the federal authorities declined to prosecute them. Instead, they were held by the federal authorities until the Hudspeth County Sheriff's Office imprisoned them.

Appellants were in jail for two days until they contend that bail was set by the Hudspeth County Judge. Craig Spease bonded out of jail on July 13, 2010, and Karen Spease sometime shortly thereafter. Much of their pleading details grievances against the officers who detained, transported, and jailed them, as well as the bail bonding companies that were involved with their bonds. Those particular allegations are not germane to the legal issue before us and we therefore do not recount them here. They also allege that in November 2010, the District Attorney's office obtained indictments, which necessitated Craig appearing before Judge Olivares on January 20, 2011. Appellants then contend that some five months later the District Attorney's office obtained the dismissal of the charges after it admitted that it had no "lab report" supporting the charges.

The Petition asserts claims against a number of parties, including Hudspeth County Sheriff's officers, the Hudspeth County Judge, the District Attorney, a bail bondsman, the court reporter for the 205th District Court, and Judge Olivares, in her individual and official capacity.

2

With regard to Judge Olivares, the Petition appears to make four factual allegations that serve as the basis for the various theories asserted:

1.  Judge Olivares did not hold an arraignment so that Appellants' not guilty pleas could be taken;

2.  There was no examining trial or determination of probable cause for the search and seizure or arrest;

3.  The Appellants filed several motions which were either not set or heard. Somewhat related to this claim, they contend Judge Olivares did not appear in court on July 21, 2011 when some matter had been set;

4.  At one point, Judge Olivares ordered the release of Appellants on a personal bond, but Appellants claim the judge did not order the release of their previously obtained bail bond. Once on out on bond, the Appellants complain of being compelled to check in weekly with court staff.[1]

These factual allegations are wound into eleven claims, which allege various federal constitutional and common law theories. The last claim requests declaratory and injunctive relief under 42 U.S.C. § 1983, seeking "protection from Hudspeth County's official customs, policies or practices of detaining and prosecuting citizens coming from western states, in violation of their constitutional rights, which also caused Plaintiffs' property to be taken, and marijuana to be 'planted' in Plaintiffs' vehicle." They allege no specific fact as to Judge Olivares other than guilty pleas are often taken in the 205th District Court for possession of small amounts of marijuana.

Judge Olivares filed a motion to dismiss for lack of subject matter jurisdiction. A heading in the body of the motion states that the "Judge is Entitled to Judicial and Sovereign Immunity." A careful reading of the text of the motion and the cases cited, however, shows the real basis for the dismissal was absolute judicial immunity, as distinct from sovereign immunity. With respect to the declaratory and injunctive relief sought, the motion to dismiss challenged

---

[1] We emphasize that these are the allegations as made in the Petition. Because the case was dismissed on an attack on this pleading, there was never any factual determination made of the truth of the allegations made.

3

Appellants' standing by contending there is no justiciable controversy when the declaration sought will not resolve the parties' dispute. The trial court granted the motion to dismiss and later severed the claims against Judge Olivares into a separate action. We begin with our standard of review and the law regarding judicial immunity.

## REVIEW OF JUDICIAL IMMUNITY CLAIMS

When a defendant raises an absolute immunity claim, such as judicial immunity, she is challenging the trial court's subject matter jurisdiction to hear the case against the immune defendant. *James v. Underwood*, 438 S.W.3d 704, 709 (Tex.App.--Houston [1st Dist.] 2014, no pet.), *citing Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). The burden is on the plaintiff to allege facts which affirmatively demonstrate that the trial court has subject matter jurisdiction. *Texas Department of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *City of El Paso v. Mazie's*, *L.P.*, 408 S.W.3d 13, 18 (Tex.App.--El Paso 2012, pet. denied). Whether a party has alleged sufficient facts is a question of law which we review *de novo*. *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Mazie's*, 408 S.W.3d at 18. As in this case, when a plea to the jurisdiction challenges the pleadings, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the case. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). But if the pleading affirmatively negates the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend their pleading. *Miranda*, 133 S.W.3d at 226-27.

Texas has adopted absolute judicial immunity as recognized in *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability only when he has acted in the clear absence of all jurisdiction.")(internal quotations omitted); *Dallas County. v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002); *James*, 438 S.W.3d at 709; *Twilligear v. Carrell*, 148 S.W.3d 502, 504 (Tex.App.--Houston [14th Dist.] 2004, pet. denied); *Hawkins v. Walvoord*, 25 S.W.3d 882 (Tex. App.--El Paso 2000, pet. denied). "Absolute privilege is founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury" that may result as a result of improper government actions. *Hawkins*, 25 S.W.3d at 889-90; *see also Bradley v. Fisher*, 80 U.S.(13 Wall.) 335, 350 (1871). The immunity applies unless the plaintiff can show: (1) the claim is based on some act not taken in the judge's judicial capacity; or (2) the judge's actions were taken in the "complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 10-12, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991); *James*, 438 S.W.3d at 709; *Twilligear*, 148 S.W.3d at 504.

With these standards in mind, we turn to the six issues which Appellants raise on appeal. While some of their arguments overlap, we discuss each separately.

*Lack of Jurisdiction as a Bar to Judicial Immunity.*

In their first issue, Appellants contend that because Judge Olivares lacked jurisdiction over the underlying criminal proceeding, her actions were not cloaked in judicial immunity. The argument, as we understand it, is that because Appellants were stopped by federal authorities, any criminal proceeding would necessarily be a federal claim.[2] According to Appellants, the

---

[2] This is the explanation of the argument as made at the hearing on the motion to dismiss:

Hudspeth County officials did not have the authority to take them into custody, nor did the El Paso County District Attorney's office have the right to initiate proceedings against them, and accordingly the case, which found its way to the 205th District Court, landed there without the requisite subject matter jurisdiction. Consequently, Appellants posit that Judge Olivares' handling of suit was without jurisdiction.

This argument misses the mark because Appellants misapprehend the meaning of jurisdiction in this context. "In determining whether an act was clearly outside a judge's jurisdiction for judicial immunity purposes, the focus is not on whether the judge's specific act was proper or improper, but on whether the judge had the jurisdiction necessary to perform an act of that kind in the case." *Bradt v. West*, 892 S.W.2d 56, 68 (Tex.App.--Houston [1st Dist.] 1994, writ denied). In other words, the question is not whether the underlying criminal charge was brought in the correct court, but whether the judge had the authority to take the particular actions that she did. *James*, 438 S.W.3d at 713 (question was whether probate judge had authority to rule on motion); *Mireles,* 502 U.S. at 13, 112 S.Ct. at 288 (concluding that judge had jurisdiction to secure attorneys' presence before him); *Malina v. Gonzales,* 994 F.2d 1121, 1124 (5th Cir. 1993)(holding that judge had power to cite for contempt and to sentence).

Judge Olivares undoubtedly had the authority to take all of the actions that she did in a criminal proceeding that found its way to her court. The 205th District Court has jurisdiction for

THE COURT: Okay. So why do you think that the judge of that county has no jurisdiction?

MS. SPEASE: Why do we think? Because if you're seized and detained by federal officers, then it's a federal case; not a -- MR. SPEASE: State.

MS. SPEASE: -- state or county case.

MR. SPEASE: How does it get to be a state case?

MS. SPEASE: Because we do say in our petition here that the only authority a State Judge has in acting on behalf of the federal government is in determining whether to hold or release a suspect based upon whether they were seized lawfully or not.

matters arising in Culberson, El Paso, and Hudspeth Counties. TEX.GOV'T CODE ANN. § 24.384 (West 2004). Its jurisdiction includes criminal matters. *Id.* With regard to the particular actions of which the Appellants complain, a trial court is empowered to set the amount of bail, and reduce it if appropriate. TEX.CODE CRIM.PROC.ANN. art. 17.15 (West 2015); *id.* at art. 17.09. A trial court has the authority to set an arraignment of the defendant "if such be necessary" and to hear and resolve motions pertaining to the case. TEX.CODE CRIM.PROC.ANN. art 28.01 (West 2006). The court is specifically empowered to resolve speedy trial issues. *Id.* at art. 28.061. The trial court is also empowered to oversee, and when appropriate, to appoint counsel to indigent defendants. TEX.CODE CRIM.PROC.ANN. art. 1.051 (West 2005) and TEX.CODE CRIM.PROC.ANN. art. 26.04 (West 2009).

Appellants criticize Judge Olivares for actions she took, or did not take, but all of those actions were within the scope of her authority as a judge. Whether she did or did not hear a motion, did or did not rule on Appellants' bail, did or did not set an arraignment, she was authorized to act as a sitting judge. Accordingly, they are within her jurisdiction for the purposes of judicial immunity.

We pause to note that Appellants' claim that they could not be prosecuted for drug charges in a state district court when they were initially apprehended by federal authorities, overlooks that the State of Texas and Federal Government have overlapping jurisdiction for certain drug crimes. Both the Texas Legislature and United States Congress have criminalized possession of even small amounts of marijuana. TEX.HEALTH&SAFETY CODE ANN. § 481.121 (West 2010)(possession of less than two ounces is a Class B misdemeanor); 21 U.S.C. § 844 (2013)(possession of controlled substance illegal). Under the dual-sovereignty doctrine, either, and possibly both, jurisdictions may seek to prosecute a violation of its own laws. *See Bartkus v.*

*People of the State of Illinois*, 359 U.S. 121, 123-24, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959); *United States v. Lanza*, 260 U.S. 377, 382 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922). This has been the rule in the United States for over 150 years. *Fox v. State of Ohio*, 46 U.S. 410, 5 How. 410, 419-20, 12 L.Ed. 213 (1847).

We also note that each action by Judge Olivares of which Appellants complain are clearly judicial actions. We consider four factors in determining whether a judge's acts are judicial: (1) whether the act complained of is one normally performed by a judge; (2) whether the act occurred in a judicial setting, such as a courtroom; (3) whether the controversy arises out of a case pending before the judge; and (4) whether the act arose out of an interaction with the judge in her judicial capacity. *Bradt*, 892 S.W.2d at 67; *Hawkins*, 25 S.W.3d at 889-90. In this case, all of the actions of Judge Olivares were clearly judicial. Appellants complain of her actions in regard to a case pending in her court. They complain of hearings held, or not held, in her courtroom. They complain of actions taken, or not taken, which are customarily done by sitting judges, such as hearing and ruling on motions. Because Appellants' pleading below complains only of judicial actions of Judge Olivares, and for activities which are within the jurisdiction of a sitting judge, we overrule Issue One.

*Relief for Ministerial Acts*

In Issue Two, Appellants contend that the actions of Judge Olivares were "ministerial." As such, they claim this is only a suit against a governmental official for declaratory relief which seeks to compel a ministerial act. They direct us to cases dealing with official immunity and the *ultra vires* exception to official immunity. *E.g. Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372, 373 (Tex. 2009)("To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion,

8

but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. . . . But the *ultra vires* rule is subject to important qualifications. Even if such a claim may be brought, the remedy may implicate immunity.").

But the suit against Judge Olivares was dismissed based on judicial immunity, not official immunity. Moreover, if there was some ministerial act that she should have performed, the remedy was to pursue a mandamus during the pendency of the underlying criminal proceeding. *See e.g. State ex rel. Young v. Sixth Judicial District Court of Appeals at Texarkana*, 236 S.W.3d 207, 210 (Tex.Crim.App. 2007)(setting forth elements for mandamus to compel performance of ministerial acts in criminal proceedings).

Finally, Appellants' arguments only bolster the conclusion that everything they complain of is protected by judicial immunity. They point to the following "ministerial" acts which Judge Olivares should have performed: "failed to perform her duty to arraign Craig Spease and Karen Spease"; "failed to determine whether the Speases needed counsel"; "failed to read the indictment or to provide the Speases with a copy of the indictment"; "failed to hear or enter the Speases' not guilty pleas upon the minutes of the court"; and "failed to hear or to rule upon the Speases' motions to suppress, which acted to deprive the Speases' right to review." Each of these complaints are clearly directed at judicial actions which a trial judge is empowered to perform. We overrule Issue Two.

*Error in Ruling only on the Pleadings.*

In Issue Three, Appellants complain that the motion to dismiss should not have been granted until there was a "fact-based jurisdictional inquiry." Citing *Trinsey v. Pagliaro*, 229 F. Supp. 647 (E.D. Pa. 1964), they contend counsel's statements or arguments are not sufficient to sustain a motion to dismiss. They further contend the trial court "failed to instruct pro se

litigants about how their pleadings are deficient or how to repair their pleadings." We reject both contentions.

While argument of counsel cannot support a plea to the jurisdiction, a plaintiff can plead themselves out of court if their pleadings affirmatively negate the existence of jurisdiction. *Miranda,* 133 S.W.3d at 226–27. In that situation, the plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend the pleadings. *Id.* Appellants' pleading, as outlined above, only complains of actions by Judge Olivares in her role as a District Court Judge.

Moreover, at the hearing on the motion to dismiss, the trial judge gave Appellants another opportunity to clarify the nature of their complaints against Judge Olivares:

> THE COURT: Okay. I understand that that's your position. I don't agree that that's the law. What I want to hear is, is there anything in your petition that you contend is something she did outside her judicial capacity? Even if it was a mistake, even if she didn't show up to court, those are all judicial acts.
>
> MR. SPEASE: I don't know that we've had any dealings with her other than judicial.
>
> MS. SPEASE: Well, there's the -- you know, the ministerial, or is it just -- she's responsible for --completely responsible for employing a court reporter, and she holds all responsibility there.
>
> .    .    .
>
> MS. SPEASE: -- you know, that's the one I can think of. But, you know, the most important thing is that we don't believe she had any authority or jurisdiction.

Nothing in this these statements remotely suggests that further pleading or discovery would avoid the bar of judicial immunity.

Nor can we fault the trial court for not instructing Appellants on how to plead their case. First, a judge cannot be both a neutral referee and an advocate in a dispute. *See United States v. Saenz*, 134 F.3d 697, 702 (5th Cir. 1998); *Ex parte Miller*, 696 S.W.2d 908 (Tex.Crim.App.

10

1985).  Nor does this rule change merely because Appellants represent themselves.  *Pro se* litigants are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure.  *Sweed v. City of El Paso*, 195 S.W.3d 784, 786 (Tex.App.--El Paso 2006, no pet.).  If this were not the rule, *pro se* litigants would gain an unfair advantage over parties who are represented by counsel.  *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005); *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978).  We overrule Issue Three.

### *Takings Claim*

In Issue Four, Appellants contend that Judge Olivares is liable under Article I, section 17 of the Texas Constitution.  That provision states that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation . . . . " TEX. CONST. art. 1 § 17(a)(West Supp. 2015).  As a general proposition, a takings claim is an exception to sovereign immunity.  *General Services Commission v. Little-Tex Insulation Company Inc.*, 39 S.W.3d 591, 598 (Tex. 2001).  Appellants contend that Judge Olivares' actions caused them to lose property, including bonding fees, and from this they seek to make a takings claim.

We reject this theory because Judge Olivares was dismissed from the lawsuit because of judicial immunity and not sovereign immunity.  Thus an exception to sovereign immunity, even were it properly pled, would not apply.  And were it otherwise, every judge who ever entered an adverse judgment against a party would be subject to a takings claim, because most judgments divest a person of either property or liberty.  Accordingly, we overrule Issue Four.

### *Use of an Automobile*

In Issue Five, Appellants maintain that immunity was waived because Judge Olivares traveled to hearings in Hudspeth County in a motor vehicle and the Texas Tort Claims Act

waives immunity for property damage which "arises from the operation or use of a motor-driven vehicle." TEX.CIV.PRAC.&REM.CODE ANN. § 101.021 (West 2011). We reject this theory for a number of reasons. First, it was never raised in Appellants' Petition, and our sole focus is on whether the last active pleading asserts a claim which is not barred by judicial immunity. Second, Judge Olivares was dismissed on judicial immunity and not sovereign immunity grounds. We are aware of no authority that the Texas Tort Claims Act operates as an exception to judicial immunity. Finally, even if the Tort Claims Act was applicable, the mere fact Judge Olivares drove to court in a motor vehicle does not operate as a general waiver of immunity.

Section 101.021 has been extensively construed and at a minimum, the government employee must have been actively operating the vehicle at the time of the incident. *See LeLeaux v. Hamshire-Fannett Independent School District*, 835 S.W.2d 49, 52 (Tex. 1992)(no waiver when government employee was not present when student sustained injury in school bus). Moreover, the tortious act must relate to the defendant's operation of the vehicle rather than to some other aspect of the defendant's conduct. *Ryder Integrated Logistics, Inc. v. Fayette County*, 2015 WL 496303, at *3 (Tex. Feb. 6, 2015). It follows that even if this theory had been pled below, the trial judge would have been compelled to reject it because there was no nexus between the use of a vehicle and the actions of which Appellants complain. We therefore overrule Issue Five.

### Request for Equitable Relief

In Issue Six, to the extent we understand it, Appellants claim they are seeking "declaratory and/or injunctive relief" to stop the Sierra Blanca checkpoint from being used to impede travel along Interstate 10 or harass those with "prescription medication . . . being

subjected to unlawful searches and seizure."[3]  In 1984, the United States Supreme Court held that judicial immunity does not shield a judge from prospective relief sought under 42 U.S.C. § 1983.  *Pulliam v. Allen*, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984). Congress later amended that statute to add language that "injunctive relief shall not be granted" in any action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity," "unless a declaratory decree was violated or declaratory relief was unavailable."  *See* Federal Courts Improvement Act, Pub.L. No. 104-317, 110 Stat. 3847 (1996)(amending 42 U.S.C. § 1983).  Several courts have viewed this statutory amendment as effectively overruling *Pulliam*.  *Guerin v. Higgins*, 8 F.App'x 31, 32 (2d Cir. 2001)("We also reject plaintiff's contention that he is entitled to declaratory relief based on *Pulliam v. Allen*, given that the *Pulliam* holding with respect to such relief has been effectively overruled by Congress." (internal citation omitted)); *Kircher v. Ypsilanti*, 458 F.Supp.2d 439, 447-48 (E.D.Mich. 2006)("This argument [that *Pulliam* allows injunctive relief against judicial officers] would be a good deal more persuasive if not for a 1996 amendment to 42 U.S.C. § 1983 that abrogated the portion of *Pulliam* upon which Plaintiff seeks to rely.").

Even were declaratory or injunctive relief still available, we think it was properly dismissed by the court below.  Our first concern is standing, which touches upon our subject-matter jurisdiction.  *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999); *see also DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008)("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it.")(footnote omitted); *SCI Texas Funeral Services, Inc. v. Hijar*, 214 S.W.3d 148, 153 (Tex.App.--El Paso 2007, pet. denied). Thus, a court may examine standing issues *sua sponte* if necessary.  *Texas Ass'n of Business v.*

---

[3] We assume Appellants are contending that any marijuana found in their vehicle was legally prescribed in California.

13

*Texas Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993)(noting that standing "may be raised for the first time on appeal by the parties or by the court"); *Martin v. Clinical Pathology Laboratories, Inc.*, 343 S.W.3d 885, 888 (Tex.App.--Dallas 2011, pet. denied); *OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 735 (Tex.App.--Dallas 2007; pet. denied).

The motion to dismiss the Appellant's injunctive relief claim asserted that "[t]here is no controversy that could be resolved." This argument mirrors the general test for standing which is whether there is a real controversy between the parties that will actually be determined by the judgment sought. *Texas Ass'n of Business,* 852 S.W.2d at 446; *SCI*, 214 S.W.3d at 153.

Appellants lack standing for the injunctive relief they seek. First, their criminal case is now dismissed. This makes their position indistinguishable from the plaintiffs in *Williams v. Lara*, 52 S.W.3d 171 (Tex. 2001). That case involved a challenge to a jail religious service on Establishment Clause grounds. Two of the plaintiffs had been incarcerated in the jail, and thus arguably were exposed to the religious services, but they had been released by the time the case was filed. *Id.* at 175. The Texas Supreme Court held once they were released from the jail, their claim became moot, which necessarily denied them standing. *Id*. at 184 ("Because Lara and Huff have been released from jail, they lack a legally cognizable interest in obtaining injunctive or declaratory relief. They no longer face the unconstitutional conduct about which they complain, and thus any prospective relief we might grant cannot help them."). The *Lara* court also rejected the argument that because the two plaintiffs might be arrested and incarcerated in the future, they had standing under the "capable of repetition, yet evading review" exception to the mootness doctrine. *Id.* One element of that exception is that the plaintiff must have a reasonable expectation that he or she will be subjected to the same action again. *Blum v. Lanier*,

997 S.W.2d 259, 264 (Tex. 1999); *General Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990). But the court was unwilling to assume that the *Lara* plaintiffs had a reasonable expectation of being recidivists such that they would again be jailed. 52 S.W.3d at 185.

For the same reason, Appellants claim is moot and denies them standing. Their criminal proceeding has ended, just as the *Lara* plaintiffs' jail term ended. Appellants do not allege, perhaps wisely so, that they intend to transport marijuana through the Sierra Blanca checkpoint in the future, and nor could we indulge the presumption that they would do so.

Another component of standing is whether the injury alleged can be redressed with a favorable decision. *Heckman v. Williamson County*, 369 S.W.3d 137, 155 n.78 (Tex. 2012), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 1926, 48 L.Ed.2d 450 (1976). *Lujan* is particularly instructive. The plaintiff there challenged the U.S Interior Department's funding of overseas construction projects. *Id*. 504 U.S. at 563, 112 S.Ct. at 2138. But the plaintiffs lacked standing on redressability grounds because some of the necessary parties were absent from the suit. *Id*. at 568, 112 S.Ct. at 2140. As presently postured, nothing that the Appellant's seek here can be obtained via a suit against Judge Olivares.

First, much of their complaint is directed at the Sierra Blanca checkpoint, which they recognize is run by an agency of the Federal Government, which is not a party below. And even if it were a party, it has been known for almost two centuries that a state court cannot issue equitable relief directing a federal officer in the performance of a federal duty. *McClung v. Silliman*, 19 U.S. 598, 5 L.Ed. 340 (1821)(state court could not issue mandamus against federal officer); *Ex parte Tarble*, 80 U.S. (13 Wall.) 397, 20 L.Ed. 597 (1871)(state cannot issue habeas

corpus relief compelling federal government to release conscripted solider); *cf. Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964)(state court was completely without power to issue injunction prohibiting plaintiff in Federal Court action from pursuing *in personam* action); 17A Charles Alan Wright et al., *Federal Practice and Procedure* § 4213 (3d ed.2007)("On the other hand, it has been clear since 1821 that a state court cannot issue a writ of mandamus against a federal officer.). As a practical matter, a state court could not issue the kind of injunctive relief that Appellants seek with respect to the checkpoint itself.

As alluded to at the hearing on Judge Olivares's severance motion, she is no longer the sitting judge of the 205th District Court. Her term expired in 2014. There is no injunctive relief that could be granted against her in an individual or official capacity that would affect the border checkpoint, or any actions of the Hudspeth County Sheriff's Department, or the District Attorney who prosecutes criminal cases. Even if she were still in office, no decree against the 205th Court could be crafted which would affect the detention, arrest, or indictment of persons transporting marijuana through the check-point. A judge only hears a case that is brought before her; she does not decide whom to arrest and whom to prosecute. For these reasons, we overrule Issue Six and affirm the judgment below.

May 31, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.