COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JOSHUA LUTTRELL, ANDREW DAVIS, MOISES ROMAN, JOE RODRIGUEZ; AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED, | § § § § | No. 08-16-00090-CV Appeal from the County Court at Law No. 5 |
| Appellants, | § | of El Paso County, Texas |
| v. | § | (TC# 2014DCV3070) |
| EL PASO COUNTY, | § | |
| Appellee. | | |

## OPINION ON REHEARING

We issued our original opinion on December 20, 2017, in which we agreed with the trial court that Appellants had failed to state a claim for relief against the County for which its immunity had been waived, but holding that the trial court erred by failing to give Appellants the opportunity to amend their petition to attempt to state a viable claim for relief. The County filed a motion for rehearing, arguing that Appellants had already been given an opportunity to amend their petition after the County filed its Plea to the Jurisdiction, and that Appellants did not request the opportunity to file a second amended petition after the trial court granted the County's Plea, thereby failing to preserve this issue for appeal. Appellants did not file a response to the motion. We grant the motion for rehearing, withdraw our prior opinion and judgment, and substitute the

following opinion. We affirm the trial court's judgment granting the County's Plea to the Jurisdiction and dismissing Appellants' lawsuit.

Appellants are four residents of El Paso who were found in contempt by Senior Judge Jerry Woodard for failing to obey a jury summons. Appellants filed a lawsuit on behalf of themselves and other similarly situated persons, naming Judge Woodard and El Paso County, requesting a declaration that their contempt judgments were void for lack of jurisdiction, and that Judge Woodard imposed court costs and fees in an "illegal" manner in their cases. In addition, Appellants sought a permanent injunction restraining and enjoining the defendants from charging illegal costs and fees in the future, a refund of all court costs, fines and fees already paid by Appellants.

Because the trial court ultimately dismissed Judge Woodard from the case, with Appellants' consent, based on the doctrine of judicial immunity, this left the County as the sole defendant in the case. The County filed a Plea to the Jurisdiction also seeking dismissal from Appellants' lawsuit, primarily arguing that it had governmental immunity from suit. In response, Appellants amended their Petition, adding an ultra vires claim against the County, as well as a claim for an illegal "taking" under the Texas Constitution. The trial court granted the County's Plea, and dismissed Appellants' lawsuit in its entirety. Appellants did not request an opportunity to file a second amended petition, and instead appealed the trial court's judgment to this Court.

Appellants contend that the trial court erred in granting the County's Plea, arguing that they raised valid causes of action in their amended Petition for which the County's immunity was waived, or in the alternative, that the trial court erred by not giving them a second opportunity to amend their Petition to correct any jurisdictional defects in their pleadings before dismissing their lawsuit. We conclude that the trial court correctly determined that Appellants' amended petition

2

did not state any valid causes of action for which the County's immunity was waived, and we further conclude that the trial court did not commit reversible error by failing to give Appellants a second opportunity to amend their petition before dismissing their lawsuit. We therefore affirm the trial court's judgment granting the County's Plea and dismissing Appellants' lawsuit.

## BACKGROUND

In an apparent reaction to ongoing problems with prospective jurors in El Paso County not appearing for jury duty when summoned to do so, the "Council of Judges of El Paso" and Judge Stephen Ables, the Presiding Judge of the Sixth Administrative Judicial Region, began taking steps to devise a plan to address this issue as early as 1999.[1] The record reflects that at a July 1999 meeting, the Council voted to appoint a visiting judge for "purposes of studying methods of jury selection, the jury wheel, purging and adding jurors and methods of sanctions against jurors not responding to qualification questionnaires and juror summons." In addition, on that same day, the Council "ordered that Judge Jerry Woodard be appointed to be assigned to the Jury Hall [,]" to perform the duties outlined above.[2] Shortly thereafter, on October 28, 1999, the Council also voted to approve the assignment of Judge Woodard and Judge Fashing to "handle jurors," and more specifically, to "question the [jury] panels, handle jury issues and qualify the jurors."[3]

---

[1] The Council of Judges of El Paso is a group consisting of all the district court and county court judges in El Paso County, with the authority to make decisions on administrative issues within the county's court system. http://www.epcounty.com/councilofjudges/default.htm.

[2] As we noted in our opinion in *Prieto Bail Bonds v. State,* 994 S.W.2d 316, 318 (Tex. App.—El Paso 1999, pet. ref'd), Judge Woodard was the District Judge of the 34th District Court of El Paso County for seventeen years, from 1969 until 1986. He was thereafter Justice on the Eighth Court of Appeals from 1986 until April 1992. In 1992, he retired and requested assignment as a senior judge pursuant to Chapter 74 of the Texas Government Code as explained in more detail below.

[3] It is unclear what role, if any, either of the judges actually played in handling the jury panels.

3

Beginning on December 1, 1998, Judge Ables signed a series of orders, effective from January 1, 1999 through June 30, 2011, for three- to six-month periods of time, each labeled as an "order of assignment by the presiding judge," assigning Judge Woodard to the district courts and county courts of law, later adding the county criminal courts of law to the list, for six-month periods of time.[4] The assignment orders did not specify any particular cases, or type of cases, over which Judge Woodward was to preside.[5] For reasons that are unclear from the record, Judge Ables thereafter signed an order assigning Judge Woodard for the period from November of 2013 to June 30, 2014 to the 384th District Court in which El Paso's then-local administrative judge, Judge Patrick Garcia sits. Once again, however, that assignment order did not clearly state the case or cases over which Judge Woodard was to preside.

Although the mechanism by which this occurred is not entirely clear from the record, the parties agree that, in several instances, when a juror failed to respond to a jury summons in a particular court in El Paso County, that court would either "refer" or "transfer" the matter to Judge Woodard for the purpose of allowing him to conduct contempt proceedings against the recalcitrant juror. The record does not indicate when this practice started or how many jurors were found in contempt by Judge Woodard.

According to Appellants, Judge Garcia entered an order dated June 12, 2014, finding that all of the orders issued by Judge Woodard prior to that date were void, and vacating Judge

---

[4] Retired judges are assigned by the presiding judge of an administrative region pursuant to Section 74.055 of the Government Code. Under that Section, the presiding judge maintains a list of retired and former judges who meet certain requirements and therefore qualify for assignments. Appellants do not dispute that Judge Woodard met the requirements under this Code provision to sit by assignment.

[5] We note that in general, "visiting judges are assigned either for a period of time or for a particular case." *See In re B.F.B.,* 241 S.W.3d 643, 645 (Tex. App.—Texarkana 2007, no pet.) (citing *In re Republic Parking Sys. of Tex., Inc.,* 60 S.W.3d 877, 879 (Tex. App.—Houston [14th Dist.] 2001, orig. proceeding)); *see also In re Canales,* 52 S.W.3d 698, 701 (Tex. 2001) (orig. proceeding) (explaining the appointment process).

Woodard's past contempt orders. The record, however, does not indicate how the matter came to Judge Garcia's attention, or what prompted him to enter that order; further, the record does not contain a copy of that order.

### Appellants' Lawsuit

On September 29, 2014, Appellants filed their first Petition on behalf of themselves and other similarly situated individuals, naming Judge Woodard and El Paso County as defendants, alleging that they were among those who were adjudged to be in contempt by Judge Woodard.[6] In their Petition, Appellants requested a declaration that their contempt judgments entered were void for lack of jurisdiction, claiming that Judge Woodard acted without legal authority in their cases. Among other things, Appellants alleged that the County had essentially created a rogue court, which they refer to as the "Woodard Jury Duty Court," pointing out that the Texas Constitution only allows the state legislature to create courts, and that neither the Council of Judges nor the County had the legal authority to create any such court.[7] Appellants further alleged that although Judge Woodard appeared to be acting in their cases pursuant to the Judge Able's assignment orders, he had no authority to act in their cases, as he had failed to take constitutional oath of office each

---

[6] Appellants also sought class certification for their lawsuit, but the trial court did not rule on that request prior to granting the County's Plea to the Jurisdiction.

[7] Appellants acknowledge that the Council of Judges could have appointed Judge Woodard to handle various jury issues pursuant to Section 62.016 of the Texas Government Code, which allows the district judges in a particular county to designate a judge to whom the general panels report for jury service, and to allow that judge to "organize, control, and supervise the members of the general jury panel." TEX. GOV'T CODE ANN. § 62.016 (West 2013). The Code also allows this judge to hear the excuses of the prospective jurors and swear them in for jury service for the week for which they are to serve as jurors. *Id.* § 62.016. In addition, the Code of Criminal Procedure permits a county to devise a plan, subject to Commissioner's Court approval, in a case other than a capital felony case, allowing "the court's designee [to] hear and determine an excuse offered for not serving as a juror, including any claim of an exemption or a lack of qualification." TEX. CODE CRIM. PROC. ANN. art. 35.03 (West 2006 & Supp. 2017). As Appellants point out, however, a judge assigned to handle jury issues under either of these provisions would not have the authority to preside over contempt cases absent a valid assignment from a presiding judge.

time he accepted an assignment from Judge Ables to handle a contempt case, thereby rendering any actions taken in those cases void.[8]  In addition, Appellants alleged that Judge Woodard did not hold proper hearings prior to finding them and other jurors in contempt, claiming that Judge Woodard improperly acted as both "a judge and a prosecutor" in their cases, thereby depriving them of their due process rights.[9]

Appellants also alleged, without explanation, that Judge Woodard imposed "illegal" court costs and/or fees that were not authorized by statute, claiming that he "would actively conceal that

---

[8] Although we need not reach this issue, we note that this allegation is based on a misunderstanding of the law. While a retired judge must take the constitutional oath of office prior to being placed on the list of judges eligible to sit by assignment, the judge need not thereafter re-take the oath each time he is assigned to sit in a particular court. *See generally Prieto,* 994 S.W.2d at 320-21 (citing *Lone Star Industries, Inc. v. Ater,* 845 S.W.2d 334, 337 (Tex. App.—El Paso 1992, no pet.)) (noting that the "presiding judge is essentially a gate keeper, and as such, his or her placement of a retired judge on the list is akin to an appointment of that retired judge to a position of availability for assignment to various courts as needed," thereby requiring a retired judge to take the oath of office before being placed on the list); *but see McMillan v. State*, No. 13-11-00123-CR, 2012 WL 3241830, at *2 (Tex. App.—Corpus Christi Aug. 9, 2012, no pet.) (mem. op., not designated for publication) (disagreeing with *Prieto,* and concluding that a senior judge is not required to swear out a new constitutional oath, finding that the oath taken by the judge prior to his retirement, i.e., in his prior active judicial position, survives and is sufficient to fulfill the oath requirement); *Hennington v. State,* 144 S.W.3d 42, 44 (Tex. App.—Eastland 2004, pet. ref'd) (also disagreeing with *Prieto*, and holding that a senior judge sitting by assignment was not required to take an additional constitutional oath upon retirement in order to comply with the Texas Constitution).

[9] We note that when a contemnor fails to obey a court order, the situation is considered indirect, or constructive, contempt of court, and in such cases, the contemnor is always entitled to adequate notice and a hearing that complies with due process requirements. *In re Reece,* 341 S.W.3d 360, 365 (Tex. 2011*)* (citing *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex. 1979)); *Ex parte Werblud,* 536 S.W.2d 542, 546 (Tex. 1976) (orig. proceeding) (observing that constructive contempt entitles the contemnor to more procedural safeguards than those afforded to direct contemnors). Moreover, because contempt proceedings are triggered by actions which defy the state's authority and entail possible penal sanctions, Texas courts have characterized such proceedings as being quasi-criminal proceedings that should conform as nearly as practicable to those in criminal cases. *See Ex parte Johnson,* 654 S.W.2d 415, 420 (Tex. 1983) (citing *Deramus v. Thornton,* 160 Tex. 494, 333 S.W.2d 824, 829 (1960); *Ex parte Scott,* 133 Tex. 1, 123 S.W.2d 306, 311 (1939)). In most instances, this will require a trial court to appoint either a public or private prosecutor to present evidence and testimony to support the contempt charges. *See generally Ex parte Daniels,* 722 S.W.2d 707, 709 (Tex. Crim. App. 1987) (recognizing that it is necessary to require testimony or the production of evidence—put forth by either a public or private prosecutor—to establish that a contempt occurred); *see also United States v. Time*, 21 F.3d 635, 638–39 (5th Cir. 1994) (in a criminal contempt action conducted pursuant to Federal Rule of Criminal Procedure 42(b), the judge may not prosecute the contempt and at the same time act as judge) (citing *American Airlines, Inc. v. Allied Pilots Ass'n,* 968 F.2d 523 (5th Cir. 1992)).

he was imposing court costs without any legal authority to do so." In addition, although they did not specify what role the Commissioner's Court may have played in this matter, Appellants requested a declaration that "all Commissioners Court Orders authorizing the defendants to charge and collect court costs and any fee found for contempt of court to be [declared] unconstitutional, void, and unenforceable." Appellants also sought a permanent injunction "restraining and enjoining" the defendants from "charging Plaintiffs court costs and fees in an illegal manner" in the future, a refund of all court costs, fines and fees paid by Appellants, in the sum of $500 per plaintiff, as well as a "fourfold" refund of the "fees" that Appellants paid, together with attorney's fees and costs of court.

### Judge Woodard's Motion to Dismiss

On November 4, 2014, Judge Woodard filed a motion to dismiss for lack of subject matter jurisdiction, claiming, among other things, that he had absolute judicial immunity from the lawsuit. At a hearing held on May 9, 2016, Appellants' attorney conceded that Judge Woodward was entitled to judicial immunity, and the trial court thereafter granted the motion, and entered a judgment dismissing all of the claims against Judge Woodard with prejudice to the refiling of the same "in any form," without objection from Appellants.

### The County's Plea to the Jurisdiction

On November 7, 2014, the County filed its answer to Appellants' lawsuit, as well as a Plea to the Jurisdiction, claiming that it had governmental immunity from the lawsuit, and that the trial court therefore lacked subject matter jurisdiction to hear the matter. In its Plea, the County pointed out that Appellants had failed to allege that the County's immunity had been waived by any

legislative grant of jurisdiction, and argued that Appellants had not alleged or described any facts that would support a finding that its immunity had been waived.

In response, Appellants filed their first amended petition on November 17, 2015, attempting to address the County's arguments. In their amended pleadings, Appellants added two new claims for relief. First, Appellants alleged that Judge Woodard, who they referred to as a "state official," had acted "without legal or statutory authority" when he imposed the "court costs and fees" under consideration herein, thereby raising what appears to be an "ultra vires" claim. Although their arguments were not entirely clear, at the hearing on the County's Plea to the Jurisdiction, Appellants alternated between alleging that Judge Woodard, Judge Ables, the El Paso Council of Judges, and the County had all acted illegally in allowing for the imposition of the allegedly unlawful costs and fees.

Second, Appellants alleged that the County had engaged in an "unlawful taking of property" when it "intentionally charged and collect[ed] [Appellants'] money for public use." At the hearing on the County's Plea to the Jurisdiction, Appellants' attorney clarified that this cause of action was based on an alleged violation of the Texas Constitution, Article I, Section 17, which prohibits the State or its political subdivisions from taking property for public use without adequate compensation.

Following the hearing, the trial court issued its order granting the County's Plea to the Jurisdiction, dismissing Appellants' Petition in its entirety. Appellants thereafter requested findings of facts and conclusions of law. The trial court denied the request, and this appeal followed.

**DISCUSSION**

8

Appellants make two arguments on appeal, which we take in reverse order. First, Appellants argue that the trial court erred in granting the County's Plea to the Jurisdiction, claiming that they made sufficient allegations in their amended petition to demonstrate that the County's immunity had been waived. Second, Appellants argue that the trial court erred by granting the County's plea to the jurisdiction without giving them an opportunity to amend their petition to state "viable state law and federal causes of action upon which a recovery could be had," arguing that their pleadings did not suffer from any incurable defect that could not have been corrected by an amendment.

## Standard of Review

The function of a plea to the jurisdiction is to determine whether the court has subject matter jurisdiction over a cause of action, "without regard to whether the claims asserted have merit." *See City of El Paso v. Waterblasting Techs., Inc.*, 491 S.W.3d 890, 894 (Tex. App.—El Paso 2016, no pet.) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). In a plea to the jurisdiction, a defendant may challenge the sufficiency of the plaintiff's pleadings to establish jurisdiction or, alternatively, the existence of "jurisdictional facts" on the ground that the facts do not support a finding of subject matter jurisdiction. *Id.* at 895 (citing *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)); *see also City of El Paso v. Collins*, 483 S.W.3d 742, 748–49 (Tex. App.—El Paso 2016, no pet.). The question of whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction, as well as whether undisputed evidence of jurisdictional facts establishes a trial court's lack of jurisdiction, are both questions of law that an appellate court reviews de novo. *See Texas Dep't of Aging & Disability Services v. Loya*, 491 S.W.3d 920, 923 (Tex. App.—El Paso 2016, no pet.)

9

(citing *Miranda*, 133 S.W.3d at 226); *see also Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

A plaintiff has the burden to allege facts affirmatively demonstrating the trial court has subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226. In determining whether a plaintiff has met this burden, we construe the pleadings liberally in favor of the plaintiff, and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226–27. We can also consider evidence, and must do so when necessary to resolve the jurisdictional issue. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. "[W]e review the allegations in the pleadings—accepting them as true and construing them in the plaintiff's favor—and any evidence relevant to the inquiry." *Loya*, 491 S.W.3d at 923 (citing *Miranda*, 133 S.W.3d at 226–27); *see also Mayfield v. Tarrant Regional Water Dist.*, 467 S.W.3d 706, 711 (Tex. App.—El Paso 2015, no pet.). If the plaintiff's pleadings and/or the jurisdictional evidence presented by the parties raises a fact issue, the trial court should deny the plea. *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 226–28). However, if the pleadings and jurisdictional evidence presented to the court negate the existence of jurisdiction as a matter of law, the court should grant the plea. *Id.*; *see also Loya*, 491 S.W.3d at 924 (citing *Mayfield*, 467 S.W.3d at 711–12).

### The Nature of Governmental Immunity

The State of Texas is considered "inviolably sovereign," and generally has sovereign immunity from suits seeking money damages. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429 (Tex. 2016); *see also Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). A county, as a political subdivision of the State, derives immunity from the state's sovereign immunity, but its immunity is referred to as "governmental immunity." *See*

10

*Catalina Dev., Inc. v. County of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003) (citing *Travis County v. Pelzel & Assocs., Inc.,* 77 S.W.3d 246, 248 (Tex. 2002)); *see also Texas Dept. of Aging & Disability Services v. Beltran*, 350 S.W.3d 410, 413 n.2 (Tex. App.—El Paso 2011, pet. denied) (although the terms are often used interchangeably, sovereign immunity refers to the State's immunity, while governmental immunity from liability protects political subdivisions of the State such as counties, cities, and school districts); *see also Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011) (sovereign and governmental immunity are related common law concepts that differ only in scope; their similarity sometimes causes the two terms to be used interchangeably).

Both sovereign and governmental immunity from suit deprive a trial court of subject matter jurisdiction, and is therefore properly raised in a plea to the jurisdiction. *See City of El Paso v. Collins*, 440 S.W.3d 879, 884 (Tex. App.-El Paso 2013) (citing *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Miranda*, 133 S.W.3d at 224); *see also Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) ("Governmental immunity from suit defeats a court's subject matter jurisdiction."). Thus, in a suit against a governmental unit, the plaintiff must affirmatively demonstrate the trial court's jurisdiction by alleging a valid waiver of immunity. *Whitley*, 104 S.W.3d at 542 (citing *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). As the County points out, a plaintiff may demonstrate a waiver of immunity by pointing to either an express Legislative waiver, or a constitutional provision that permits the plaintiff to bring a claim against the governmental unit. *See City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 513 (Tex. App.—Austin 2014, no pet.) (noting that a plaintiff has an independent

11

right to bring constitutional claims against a city, as well as claims for which the Legislature has waived the City's immunity). We review each of Appellants' claims for relief separately to determine if the trial court had subject matter jurisdiction over the County for any of those claims.

## APPELLANTS' REQUEST FOR DECLARATORY RELIEF

In their original and amended Petitions, Appellants primarily sought declaratory relief, asking the trial court to declare their contempt judgments, including the portion of the judgments assessing court costs and fees, to be void.[10]  We therefore must consider whether the court had subject matter jurisdiction over Appellants' request for declaratory relief under the Uniform Declaratory Judgments Act (UDJA).

### Did Appellants Challenge the Validity of a Statute or Ordinance?

As a preliminary matter, we note that the UDJA is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2015). The Texas Supreme Court has made it clear that "[a] declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). It appears that, in part, Appellants are attempting to create a "justiciable controversy" between the parties by asserting that they are seeking to seeking to challenge the "constitutional and statutory provisions which permitted, or do not exist to permit, the formation and operation of the Woodard

---

[10] Although Appellants labeled their Petition as being for "Damages" and a "Declaratory Judgment," their request for "damages" appears to be limited to their request for a "refund" of the fines, court costs and fees that were imposed pursuant to their criminal contempt judgments.

12

Jury Duty Court," and the allegedly unconstitutional actions of El Paso County and Judge Jerry Woodard, which led to Judge Woodard finding them in contempt and charging them "illegal fees."

We note that in general, the UDJA allows a person "whose rights, status, or other legal relations are affected by a statute," to have "determined any question of construction or validity" arising under the statute, and "obtain a declaration of rights, status, or other legal relations thereunder." *Carowest Land, Ltd*., 432 S.W.3d at 530 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a)).[11] Thus, in certain circumstances, the UDJA provides for a limited waiver of sovereign or governmental immunity when a party brings an action against a governmental entity, challenging the validity of a legislative enactment. *See, e.g., id*. (citing *Texas Parks and Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011)) (quoting *Texas Ass'n of Bus*., 852 S.W.2d at 444; IT–Davy, 74 S.W.3d at 855). For example, the state may be a proper party to a declaratory judgment action that challenges the validity of a statute, or one that asks the court to construe the statute. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) (citing *Heinrich*, 284 S.W.3d at 373 n.6) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b)); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–98 (Tex. 2003). However, the UDJA does not permit a party to bring an action to challenge the actions that a governmental entity took under a statute, and instead, the validity of the statute itself must be challenged for governmental immunity to be waived. *Sefzik*, 355 S.W.3d at 622 (plaintiff was not challenging the validity of a statute, and was

---

[11] Section 37.004(a) of the Texas Civil Practice and Remedies Code provides in part that: "[a] person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise [to] have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2015).

instead, only challenging a state agency's actions under it, and failed to direct the court to any provision of the UDJA that expressly waived immunity for such a claim).

Although Appellants purport to challenge the constitutionality of a statute, they have failed to identify any statute they believe is invalid or in need of construction. Instead, their pleadings reveal that the true nature of their claims center on their belief that the actions of Judge Woodard and/or the County violated existing law, i.e., that they were held in contempt in violation of their due process rights, and that they were accessed illegal court costs and fees, which were not "authorized by any Texas Statute or any other law or the Commissioners Court[.]" As set forth above, however, this cannot be the subject of an action brought against a governmental entity under the UDJA.

### Can Appellants Collaterally Attack a Void Criminal Contempt Judgment in a UDJA Action?

We also note that although the Declaratory Judgments Act may not typically be used to collaterally attack, modify, or interpret a prior court judgment, in some instances, a party may bring a collateral challenge to a judgment in a declaratory judgment proceeding, seeking to have the judgment declared void and set aside. *See, e.g., Mungia v. Via Metro. Transit*, 441 S.W.3d 542, 547 (Tex. App.—San Antonio 2014, pet. denied) (holding that a void default judgment may be collaterally attacked through a declaratory judgment action seeking to declare the judgment void and having it set aside); *see also Wagner v. D'Lorm*, 315 S.W.3d 188, 193 (Tex. App.—Austin 2010, no pet.) (recognizing that a litigant may bring a declaratory judgment action to declare a judgment void in another court); *see generally PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271–72 (Tex. 2012) (recognizing that after the time has run to bring a direct challenge to a void order, such as by appealing that order, a party may challenge an order collaterally at any time). The

14

Supreme Court has described a judgment as void, as opposed to merely voidable, when "the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (citing *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)). In the present case, Appellants asked the trial court to issue a declaration that Judge Woodard's contempt judgments were void for lack of jurisdiction. However, we need not address the question of whether in fact the judgments were void, as we conclude that the UDJA is the wrong vehicle for making a challenge to the validity of a criminal contempt judgment.

In reaching this conclusion, we first find it significant that the contempt judgments under consideration herein involved criminal contempt proceedings, rather than civil contempt. As we have previously recognized, criminal contempt is punitive in nature, and punishes the contemnor for a completed act or omission, in contrast to civil contempt, which orders a party confined to compel compliance with an existing order. *See generally In re Cisneros*, 487 S.W.3d 237, 242 (Tex. App.—El Paso 2015, no pet.); *In re Gabrielova*, 527 S.W.3d 290, 294-95 (Tex. App.—El Paso 2016, orig. proceeding) (criminal contempt is punitive in nature); *see also Ex parte Johnson*, 654 S.W.2d 415, 421 (Tex. 1983) (trial for criminal contempt is an inherently criminal proceeding); *Ex parte Williams*, 799 S.W.2d 304, 306 (Tex. Crim. App. 1990) (it is well established that a contempt conviction is "criminal" if it punishes for past violations, and "civil" if it attempts to coerce future action). In the present case, it is clear that Appellants were punished with the imposition of a fine for their "completed act or omission" in not responding to a juror summons, and we therefore conclude that the contempt proceedings under consideration were criminal in nature.

15

In general, Texas courts have held that, given the bifurcated system of civil and criminal jurisdiction, civil courts may only exercise "equity jurisdiction" in cases involving criminal proceedings in a "narrow" set of circumstances. *City of Dallas v. Woodfield*, 305 S.W.3d 412, 416–17 (Tex. App.—Dallas 2010, no pet.). This limited equity jurisdiction allows a litigant to bring a lawsuit under the UDJA to challenge the constitutionality of a penal statute or ordinance, but only when the litigant is faced with an imminent threat of prosecution under the statute or ordinance, and the enforcement of the statute or ordinance would cause irreparable injury to the litigant's vested property rights.[12] *See id.* (citing *State v. Morales*, 869 S.W.2d 941, 945 (Tex. 1994)); *Malone v. City of Houston*, 278 S.W.2d 204, 205–06 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e.) (the jurisdiction of the trial court to construe a criminal ordinance in a UDJA lawsuit is dependent upon the question of whether the ordinance involved is unconstitutional and void, and whether its enforcement would result in irreparable injury to a vested property right). Absent an imminent threat of prosecution, a court exercising civil jurisdiction in a declaratory relief case "simply has no jurisdiction to render naked declarations of 'rights, status or other legal relationships arising under a penal statute.' " *See Consumer Serv. All. of Texas, Inc. v. City of Dallas*, 433 S.W.3d 796, 809 (Tex. App.—Dallas 2014, no pet.) (internal citations omitted).

---

[12] The Texas Supreme Court posited that there are four types of situations that could arise where a party might attempt to obtain relief from an equity court based on the alleged unconstitutionality of a penal statute or ordinance: "(1) the statute is enforced and the party is being prosecuted, (2) the statute is enforced and the threat of prosecution is imminent, although the party has yet to be prosecuted, (3) there is no actual or threatened enforcement of the statute and the party does not seek an injunction against its enforcement, but the statute is nonetheless integrally related to conduct subject to the court's equity jurisdiction, or (4) there is no actual or threatened enforcement of the statute and no complaint of specific conduct remediable by injunction." *State v. Morales*, 869 S.W.2d 941, 944-45 (Tex. 1994). Only in the first three categories does a civil court have equity jurisdiction to review the constitutionality of a penal statute or ordinance. As to the fourth scenario, the Court concluded, "In this most abstract of contexts from which to decipher constitutional mandates, equity jurisdiction is plainly lacking." *Id.* at 946. *City of Dallas v. Woodfield,* 305 S.W.3d 412, 417 (Tex. App.—Dallas 2010, no pet.); *see also Ryan v. Rosenthal*, 314 S.W.3d 136, 141–42 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

Appellants clearly do not fit within this limited exception. As explained above, Appellants do not challenge the constitutionality of any penal statute or ordinance, nor do they allege that that they have any vested property interest at stake.[13] In addition, Appellants have not alleged any facts that would support an inference that they, or any other El Paso residents, are faced with any imminent threat of prosecution in which their rights might be violated. Instead, based on their own pleadings, it appears that Appellants, as well as the other individuals they seek to have certified in their class, have already been adjudged in contempt, and have either paid or had court costs and fines assessed against them.[14] Under such circumstances, courts have held that a plaintiff has no basis for bringing a challenge relating to the propriety of a criminal proceeding in a civil court of equity under the UDJA. *See generally Reese v. City of Hunter's Creek Village*, 95 S.W.3d 389, 391 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (trial court properly granted City's plea to jurisdiction in civil equity lawsuit challenging validity of municipal ordinance where one plaintiff had already pled no contest to his citation and another plaintiff had already been convicted); *Woodfield*, 305 S.W.3d at 417–18 (plaintiff's action seeking to declare city ordinance invalid was moot where plaintiff's criminal case was dismissed) (citing *Morales*, 869 S.W.2d at 944 n.7); *Trulock v. City of Duncanville*, 277 S.W.3d 920, 928 (Tex. App.—Dallas 2009, no pet.) (where city repealed challenged ordinance during pendency of declaratory relief action, court concluded that the plaintiffs' challenge to the ordinance had been rendered moot). Accordingly, we hold that

---

[13] We also note that the County would not be the proper party for making a challenge to a statute or ordinance unless it was shown that the County was responsible for enacting and/or enforcing the law under consideration.

[14] As discussed below, although Appellants requested injunctive relief to prohibit the County from assessing illegal costs and fees on them in the future, there is nothing in their pleadings to suggest that the County is continuing to impose any such costs and fees on any El Paso citizens. Instead, as Appellants themselves alleged, this practice appears to have stopped when Judge Garcia entered his 2014 order vacating all prior contempt judgments entered by Judge Woodard.

17

Appellants are not permitted to challenge their contempt judgments collaterally in a UDJA proceeding.[15]

Instead, as the County points out, the proper method to collaterally attack a criminal contempt judgment as being void is through either a petition for a writ of habeas corpus when the contemnor has been subjected to jail time, or a petition for a writ of mandamus when, as here, the contemnor is subjected only to a fine.[16] *See Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 2001, pet. denied) (citing *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding); *see also Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex. 1976) (an original habeas corpus proceeding in this Court is a collateral attack upon the contempt order, and the relator may be relieved of that order's impositions only if the order is void). As we have previously recognized in the context of felony convictions, the procedure established in Article 11.07 of the Texas Code of Criminal Procedure for bringing a petition for a writ of habeas corpus, is the exclusive post-conviction judicial remedy available when a conviction is final and the applicant is confined by virtue of his felony conviction. *See In re Soriano*, No. 08-14-00072-CR, 2014 WL 984381, at *1

---

[15] We note that other courts considering this issue have reached a similar conclusion. *See, e.g.*, *Gajewski v. United States,* 368 F.2d 533, 534 (8th Cir. 1966) (holding that there is no authority for allowing a state or federal prisoner to use the declaratory judgment act as a post-conviction remedy) (citing *Coronado v. United States*, 341 F.2d 918-19 (5th Cir. 1965)); *Sinclair v. State*, 199 Md. App. 130, 140, 20 A.3d 192, 198 (2011) (ruling that plaintiff could not file a declaratory judgment action in his criminal cases to obtain a ruling concerning the collateral consequence of his conviction, where state law did not recognize the filing of a declaratory judgment action in a criminal case); *see also Bryarly v. State,* 232 Ind. 47, 50–52, 111 N.E.2d 277, 279 (1953) (court had no jurisdiction to consider an action under the UDJA to interpret the constitutionality of a statute upon which a prosecution was based in a pending criminal case); *State Office of the Attorney Gen. v. Justice Court of Las Vegas Twp.,* 392 P.3d 170, 173–74 (Nev. 2017) (holding that Nevada's UDJA only applies to declaratory relief in civil actions).

[16] In its brief, the County contends that Appellants could have directly appealed the contempt orders. We note, however, that there is no right to direct appeal of a contempt order. *In re Cisneros*, 487 S.W.3d 237, 243 (Tex. App.—El Paso 2015, no pet.); *see also Rosser v. Squier,* 902 S.W.2d 962, 962 (Tex. 1995) (appellate courts lack appellate jurisdiction to review the trial court's actions in holding an individual in contempt, though they may review the action in an original writ proceeding); *In re Estate of Gibbons*, 451 S.W.3d 115, 127 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (court has no appellate jurisdiction to review the trial court's two contempt orders, even on appeal from the trial court's final order).

(Tex. App.—El Paso Mar. 12, 2014, no pet.) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. ANN. art. 11.07 (West Supp. 2013)); *see also Ex parte Adams*, 768 S.W.2d 281, 287 (Tex. Crim. App. 1989); *McBride v. State*, 114 S.W.3d 556, 557 (Tex. App.—Austin 2002, no pet.)). In such cases, a convicted defendant is not permitted to seek equitable, injunctive relief as a "post-conviction remedy." *See, e.g., Calton v. Schiller*, 498 S.W.3d 247, 252 (Tex. App.—Texarkana 2016, pet. denied) (holding that the exclusive post-conviction remedy in final felony convictions in Texas is through a writ of habeas corpus pursuant to Texas Code of Criminal Procedure Article 11.07, and that a defendant would not be permitted to seek injunctive relief as a "post-conviction remedy"); *see also McBride*, 114 S.W.3d at 557 (Article 11.07 vests complete jurisdiction over post-conviction relief from final felony convictions in the Texas Court of Criminal Appeals, and therefore criminal defendant was not entitled to seek injunctive relief as a post-conviction remedy).

We believe the same rationale applies in cases in which a contemnor seeks to challenge the validity of his criminal contempt judgment as well, and that a criminal contemnor—even one who has received a fine-only punishment—should be limited to challenging his judgment in a writ proceeding, and should not be permitted to attack the judgment by seeking equitable relief under the UDJA.

### Can Appellants Challenge the Imposition of Illegal Court Costs and Fees in a UDJA Action?

In their Petition, Appellants also sought the recovery of the fines, fees and costs, which they believe Judge Woodard wrongfully imposed in their contempt judgments, and seek the return of "filing fees and fines" in the amount of $500 per plaintiff. As a preliminary matter, we note that to the extent that Appellants are seeking money damages from the County, as opposed to

19

declaratory relief, Appellants' request for a "refund" cannot be brought in a UDJA proceeding in the absence of legislative permission. *See, e.g., Fed. Sign v. Texas S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997) (recognizing that courts routinely "distinguish suits to determine a party's rights against the State from suits seeking damages[,]" as "[a] party can maintain a suit to determine its rights without legislative permission"). Thus, where a lawsuit against a governmental entity seeking declaratory relief does more than just ask the court to construe the parties' rights, and instead seeks money damages, the trial court lacks jurisdiction to hear the matter in the absence of legislative permission to bring the suit. *See IT–Davy*, 74 S.W.3d at 856 (holding that a plaintiff "cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim").

Appellants, however, believe that a declaratory judgment action is an appropriate vehicle to seek a declaration that the County was not authorized to "charge or collect costs and/or penalty assessment fees" in their cases, and to request a "refund" of those court costs and fees.[17]   In support of this argument, Appellants rely almost exclusively on *Camacho v. Samaniego*, 831 S.W.2d 804 (Tex. 1992). In *Camacho*, several bail bond issuers brought a lawsuit seeking declaratory relief in which they challenged a "bond approval fee" that the county commissioner's court had voted to impose in all criminal cases, which was to be collected from the bond issuers by the county's Sheriff. In their lawsuit, the bond issuers named both the County and the Sheriff, and sought a declaration from the trial court that the fee was unconstitutional, as it was not

---

[17] We note that Appellants have not alleged in their pleadings or in their brief why they believe that the fines, fees, or costs imposed were not permitted by law; in fact, they have not even explained exactly what fines, fees, or costs were assessed in their cases. Although we recognize that it may be possible for Appellants to cure that defect in their pleadings, they must still meet the challenge of establishing that the trial court has jurisdiction to hear this claim and to provide them with the relief requested.

authorized by statute. *See Camacho*, 831 S.W.2d at 808. Although both the trial court and the Court of Appeals rejected their claim, the Supreme Court agreed with the bond issuers that the County was not authorized to impose the fee, and rendered judgment in their favor. In particular, the Court held that a county may only collect the fees enumerated in Article 102 of the Code of Criminal Procedure, and that the bond approval fee adopted by the commissioner's court were not included in that Article. *Id.* at 812; *see also* TEX. CODE CRIM. PROC. ANN. art. 103.002 (West 2006) ("An officer may not impose a cost for a service not performed or for a service for which a cost is not expressly provided by law."). The Court concluded that because the bond approval fee was not explicitly authorized by statute, it was therefore unlawfully imposed and collected. *Camacho*, 831 S.W.2d at 811–12. The Court therefore entered judgment for the bail bondsmen, declaring the fee to be illegal, and remanding the matter to the trial court for further proceedings. *Id*. at 815.

Appellants contend that the "same situation is presented here," i.e., that they were subjected to the imposition of illegal fines, costs and fees that were not authorized by the constitution or the legislature, and that the Court's holding in Camacho supports their request for a declaration that the costs and fees in their cases were also illegally imposed and collected. However, we find several differences between the claims that Appellants have made against the County, and the claims presented in Camacho.

First, we find it significant that the plaintiffs in Camacho were complaining about a formal decision of the county commissioner's court. Although the Court in Camacho did not directly discuss the issue of governmental immunity, the Court did point out that the trial court had subject matter jurisdiction of the plaintiffs' request for declaratory relief under both the Texas Constitution and the Texas Government Code, which give a district court "appellate jurisdiction and general

21

supervisory control over the County Commissioners Court," and the power to review and set aside their decisions. *Camacho*, 831 S.W.2d at 808 (citing TEX. CONST. art. V, § 8, and TEX. GOV'T CODE ANN. § 24.020); *see also Henry v. Cox*, 520 S.W.3d 28, 36-37 (Tex. 2017) (reiterating that the Texas Constitution vests district courts with "general supervisory control" over the commissioners courts, which, among other things, permits a court to set aside decisions or actions of the commissioners court that are illegal, unreasonable, or arbitrary).

In the present case, however, Appellants have not named the El Paso County's Commissioner's Court in their lawsuit, nor have they alleged any facts suggesting that the Commissioner's Court was responsible for setting any illegal costs or fees, or that it otherwise played any role in authorizing Judge Woodard to impose or collect any such costs or fees. We do note, however, that in their prayer for relief, Appellants have asked for a "declaration that all Commissioners Court Orders authorizing the defendants to charge and collect court costs and any fee found for contempt of court to be unconstitutional, void, and unenforceable." However, nowhere in the current pleadings do they allege that any Commissioners Court's orders actually exist, nor do they set forth any factual allegations in their pleadings that would suggest that the Commissioners Court took any action authorizing Judge Woodard's actions. In fact, to the contrary, Appellants expressly pled in both their original and amended petitions that the defendants were "not authorized by any Texas Statute or any other law or the Commissioners Court to charge or collect court costs and/or penalty assessment fees [emphasis added]."

Moreover, Appellants expressly alleged in their amended petition that it was Judge Woodard who improperly assessed the illegal costs and fees in their cases. Yet, as discussed above, Judge Woodard was entitled to judicial immunity for his actions in imposing any such fines or

22

court costs, and has already been dismissed from the case on that basis. As set forth above, the only defendant left in the present case is the County, yet in their current pleadings Appellants have not alleged that the County engaged in any wrongdoing with regard to the imposition or collection of the court costs and fees in question.

In addition, as our sister court recognized in *Kubosh v. Harris County*, 416 S.W.3d 483 (Tex. App.—Houston [1st Dist.] 2013, pet. denied), the plaintiffs in *Camacho* were paying the bond approval fees "under duress," (i.e., as a means of staying in business) and did so outside of a judicial proceeding; therefore, they had no other means to challenge the fee except to seek an injunction against the county officials responsible for imposing and collecting the fee. *Id*. at 487. The Court recognized that due process requires that persons who have paid illegal or invalid taxes or fees "under duress" outside of a judicial proceeding must have some recourse to recover the fees, and may therefore seek a refund in a proceeding in equity under such circumstances. *Id*. However, in contrast, when fees are paid in the context of a judicial proceeding, the aggrieved party may challenge the imposition of those fees in the context of those proceedings, thus satisfying the requirements of due process. *Id*. at 487-88 (distinguishing *Camacho* and other cases in which costs or fees were collected outside of a judicial proceeding, leaving the plaintiffs with no judgment from which they could appeal). In *Kubosh*, the court held that the plaintiffs therein, who were also bondsmen, had paid their fees in a judicial setting, i.e., in the course of a criminal-bond-forfeiture case, and that the bondsmen had recourse to challenge the fee in the criminal court in which they had paid the fee, either through filing a motion to correct or retax costs in that court, or through a direct appeal from the judgment assessing the fee as a court cost, thereby satisfying due process requirements. *Id*. The court in *Kubosh* further concluded that this was the exclusive remedy for

23

challenging the fee, and held that the trial court therefore did not have subject matter jurisdiction to hear the plaintiffs' claims for injunctive and declaratory relief challenging the fees. *Id.* at 490.

This concept was also explored by the Texas Supreme Court in *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868 (Tex. 2005). In that case, several college students brought a class action against a community college, seeking a declaration that certain student fees they paid were illegal. *Id.* at 870. The trial court entered judgment for the students, declaring the fees to be illegal and ordering the college to refund the fees to the students, and the court of appeals affirmed the judgment in all relevant respects. In disagreeing with the trial court, the Texas Supreme Court recognized that although the college may not have had the authority to impose at least one of the fees in question, the students were not entitled to a reimbursement of those fees, based on its finding that the students did not pay the fees "under duress." *Id.* at 876, 883. In reaching this conclusion, the Court expressly rejected the dissent's contention that the law requires public agencies to reimburse all taxes and fees later determined to be void, expressly recognizing that taxes and fees determined to have been paid "voluntarily" are not recoverable. *Id.* at 881-82. Instead, the Court noted the only person who has a valid claim for repayment of an illegally-imposed government fee or tax is one who has paid the fee or tax "under duress." *Id.* at 877. In explaining this concept, the Court noted that under the common law, a "common element of duress in all its forms (whether called duress, implied duress, business compulsion, economic duress or duress of property) is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Id.* at 878-79. However, the Court recognized that the common law has been "supplanted" in many

24

instances by statutes that give a person a remedy to challenge the imposition of illegal fees and taxes though statutorily-adopted "mechanisms and protest requirements [.]" *Id.* at 879.

Although it found that there was no statute in place giving the students recourse to challenge the fees, the Court nevertheless found that the students had not paid their fees under duress, as they could have avoided the fees in a variety of ways, such as taking fewer hours during the semester, by seeking a waiver of the fees, or by protesting the imposition of the fee. *Id.* at 881. The Court noted that because the students had various "predeprivation remedies" available to them to challenge the fee, this satisfied the due process requirements of ensuring that persons who have paid invalid public taxes or fees are given "recourse to recoupment remedies [.]"[18] *Id.* at 881 n.9.

In the present case, we also find it significant that Appellants had other means of challenging the validity of the costs and fees imposed on them. As in *Kubosh*, the costs and fees under consideration herein were imposed on Appellants in a judicial proceeding, and Appellants could have challenged the imposition of those costs and fees in the context of that proceeding. As discussed above, Appellants could have filed extraordinary writ proceedings in this court, raising not only their due process claims, but their claim that Judge Woodard imposed unauthorized court costs and fees. *See, e.g., Ex parte Carey*, 704 S.W.2d 13, 14 (Tex. 1986) (granting petition for writ of habeas corpus where the trial court had improperly assessed fines of more than the statutory maximum in his two contempt cases, and ruling that the contemnor was entitled to be discharged upon the payment of the maximum fine amounts in his two cases); *see also Ex parte Campbell*, 417 S.W.2d 585, 586-87 (Tex. 1967) (court granted petition for writ of habeas corpus where the

---

[18] In reaching this conclusion, the Court in *Bolton* noted that the parties in *Camacho* did not raise the question of whether the bail bond fees were imposed under duress or not, and therefore, the Court did not consider the issue in its opinion in that case. *Id.* at 883.

25

trial court entered a judgment of contempt in excess of the statutory maximum, and remanded the matter to the sheriff with orders that he be discharged upon the payment of the statutory fine and costs). In addition, as the County points out, Appellants could have challenged the imposition of any allegedly improper court costs or fees by bringing either a motion to retax costs, or in a proceeding under Article 103.008 of the Texas Code of Criminal Procedure, which provides a separate statutory remedy to correct erroneous or unsupportable court costs.[19] *See Cardenas v. State*, 423 S.W.3d 396, 399 (Tex. Crim. App. 2014) (noting that convicted defendants have the right to object to the assessment of court costs against them for the first time on appeal or in a proceeding under Article 103.008 of the Texas Code of Criminal Procedure); *see also Johnson v. State*, 423 S.W.3d 385, 389, 395 (Tex. Crim. App. 2014) (recognizing that a defendant may challenge the imposition of wrongly-imposed costs for the first time on appeal or in a proceeding under Article 103.008). Accordingly, we conclude that Appellants did not make their payments under duress, and that their due process rights were clearly protected by the fact that they had these alternative means available to them to challenge the validity of the allegedly illegal court costs or fees that were imposed on them.[20]

---

[19] Article 103.008 provides in part that, "On the filing of a motion by a defendant not later than one year after the date of the final disposition of a case in which costs were imposed, the court in which the case is pending or was last pending shall correct any error in the costs." TEX. CODE CRIM. PROC. ANN. art. 103.008 (West 2006).

[20] In addition, we note that in their Petition, Appellants requested "a permanent injunction restraining and enjoining Defendants from charging Plaintiffs court costs and fees in an illegal manner" in the future. Aside from the fact that Appellants have not named a county official they seek to restrain, we also find it significant that there is nothing in the record to indicate that Appellants are faced with the threat of having additional court costs or fees imposed on them, or that any county official is attempting to collect on any unpaid judgments entered by Judge Woodard, particularly in light of Appellants' statement that Judge Garcia has already vacated those judgments. As such, we find no basis for Appellants' request for injunctive relief of this nature. *See generally State v. Morales*, 869 S.W.2d 941, 946-47 (Tex. 1994) (recognizing that "[a]n injunction will not issue unless it is shown that the respondent will engage in the activity [to be] enjoined") (citing *Frey v. DeCordova Bend Estates Owners Ass'n,* 647 S.W.2d 246, 248 (Tex. 1983) (holding that the fear or apprehension of the possibility of injury is not a basis for injunctive relief)).

We note, however, that Appellants have cited one statute, which they believe gives them legislative permission to seek a refund, which we consider next.

## APPELLANTS' REQUEST FOR A "FOURFOLD" REFUND OF FEES

In their petition, Appellants asserted that they were entitled to a refund in the amount of "[f]ourfold the fees unlawfully demanded and received in accordance with Article 3909, V.T.C.S." This claim must fail for several reasons. First, the Texas Legislature repealed Article 3909 of Vernon's Texas Statutes and Codes several years ago by Acts 1993, 73rd Leg., ch. 268, § 46(1), eff. Sept. 1, 1993.[21] *See Vannerson v. Klevenhagen*, 908 S.W.2d 37, 40 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Moreover, although Article 3909 was replaced with Section 118.801(a) of the Local Government Code, that statute provides no basis for Appellants' claim against the County. Section 118.801 provides that: "An officer named in this chapter who, in bad faith, demands and receives a higher fee than authorized under this chapter or a fee that is not authorized under this chapter is liable to the aggrieved person for four times the amount unlawfully demanded and received."[22] TEX. LOC. GOV'T CODE ANN. § 118.801 (West 2008). Chapter 118 of the Code lists a variety of county officials, including County Clerks, County Judge, Justices of the Peace, Sheriffs and Constables, County Treasurers, County Surveyors, and County tax-assessor-

---

[21] Article 3909 was entitled "extortion," and clearly contemplated actions for fourfold refunds only when the officer acted in bad faith. *See Vannerson v. Klevenhagen*, 908 S.W.2d 37, 40 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *see also Merrill v. Carpenter*, 867 S.W.2d 65, 68 (Tex. App.—Fort Worth 1993, writ denied) (noting that Article 3909 was created to deal with situations in which an officer was engaging in "extortion," and acting in bad faith by demanding and receiving a fee not allowed by statute).

[22] Section 118.801(d) provides that "bad faith" includes a "demand that an officer makes with the knowledge that a fee is not authorized by law." In addition, to providing for a fourfold refund of fees imposed in bad faith, subsection (b) provides that an "officer who, in good faith, demands and receives a higher fee than authorized or a fee not authorized under this chapter is liable to the aggrieved person for the difference between the amount demanded and received and the amount of the fee authorized under this chapter." TEX. LOC. GOV'T CODE ANN. § 118.801 (West 2008).

collector, who may be liable under the statute, as well as a variety of fees that may be collected by those officers. However, Chapter 118 does not list district court or county court at law judges among those who are liable under Section 118.801. Once again, we note that Appellants have only identified Judge Woodard (a retired state district court judge who is no longer in the lawsuit) as the individual who wrongfully extorted fees from them, and they do not provide the identity of any other county officer who they believe is liable under this Chapter. Accordingly, in the absence of any allegation that a governmental officer listed in his code provision improperly imposed a fee not authorized under Chapter 118, we conclude that Appellants have no valid claim for a refund under this statute.

## APPELLANTS' ULTRA VIRES CLAIM

Appellants also assert that they have a valid claim that waives the County's immunity presumably based on the ultra vires exception to the doctrine of governmental immunity, arguing that the "Defendants acted without legal authority and charged illegal and unauthorized court costs and fines."[23] The ultra vires exception to governmental immunity permits a plaintiff to seek relief against a government actor who has allegedly violated statutory or constitutional provisions, by acting without legal authority or by failing to perform a purely ministerial act. *See City of El Paso*

---

[23] Although Appellants do not use the term "ultra vires" in their Petition, they cited *Creedmoor-Maha Water Supply Corp. v. Texas Com'n on Envtl. Quality,* 307 S.W.3d 505, 513 (Tex. App.—Austin 2010, no pet.), a case in which the court discussed the *ultra vires* exception to governmental immunity, when setting forth this new claim. Moreover, given Appellants' contention that Judge Woodard acted unlawfully in his capacity as a "state official," we liberally construe their claim as an attempt to bring an *ultra vires* action. *See generally Smith v. Dist. Attorney Office for Wood County,* No. 03-13-00220-CV, 2014 WL 5420536, at *2 (Tex. App.—Austin Oct. 24, 2014, pet. denied) (mem. op., not designated for publication) (although plaintiff did not specifically characterize his lawsuit as being an *ultra vires* action, court liberally construed it as such, given the fact that he was claiming his constitutional rights were violated by the action or inaction of government officials); *cf. Texas Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex. 2010) (concluding that plaintiff's claim was *not* an ultra vires claim because it did not involve any government officer's action or inaction).

*v. Waterblasting Techs., Inc.*, 491 S.W.3d 890, 907–10 (Tex. App.—El Paso 2016, no pet.) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009)). An ultra vires claim based on actions taken "without legal authority" has two fundamental components: "(1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *See Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017) (citing *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)). This exception applies when a government officer with some discretion to interpret and apply a law acts "without legal authority, and thus ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hall*, 508 S.W.3d at 238 (citing *Hous. Belt*, 487 S.W.3d at 158) (internal quotations omitted). The basic justification for this ultra vires exception to immunity is that ultra vires acts— or those acts without authority—should not be considered acts of the state at all. *Id.* (citing *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (1945)). Consequently, ultra vires suits do not attempt to exert control over the State—they attempt to reassert the control of the State over one of its agents. *Id.* (citing *Heinrich*, 284 S.W.3d at 372).

Because of this, governmental entities are not the proper parties in an ultra vires action, and instead, the proper defendant is "the government official himself 'whose acts or omissions allegedly trampled on the plaintiff's rights, not the [governmental] agency itself.' " *Waterblasting Technologies, Inc.*, 491 S.W.3d at 907 (quoting *Texas Dept. of Trans. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011)); *see also Hall*, 508 S.W.3d at 238-39. In the present case, the only "actor" or "official" that Appellants have identified in their pleadings is Judge Woodard, who they describe as a "state official," asserting that Judge Woodard acted without any legal authority in holding them in contempt without due process of law, and in "actively conceal[ing]" the fact that he was

29

imposing court costs and fees that were not authorized by statute. This argument fails for at least two reasons.

First, we note that when acting in their judicial capacity, judges are entitled to absolute immunity for any action taken in that capacity, no matter how erroneous the act or how evil the motive, unless the act is performed in the clear absence of all jurisdiction. *See Hawkins v. Walvoord,* 25 S.W.3d 882, 890 (Tex. App.—El Paso 2000, pet. denied) (citing *Garza v. Morales*, 923 S.W.2d 800, 802 (Tex. App.—Corpus Christi 1996, no writ)); *see also Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) (judicial immunity is overcome only for actions that are: (1) nonjudicial, i.e., not taken in the judge's official capacity; or (2) taken in the complete absence of all jurisdiction).[24] Thus, various courts have held that a judicial officer, who has acted in his judicial capacity, may not be named as a defendant in an ultra vires claim.[25]   *See,*

---

[24] Whether an act is judicial (or nonjudicial) for this purpose is determined by the nature of the act, *i.e.,* whether it is a function normally performed by a judge, as contrasted from other administrative, legislative, or executive acts that simply happen to be done by judges. *Twilligear v. Carrell*, 148 S.W.3d 502, 504–05 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). Judicial acts include those performed by judges in adjudicating, or otherwise exercising their judicial authority over, proceedings pending in their courts. *Id.* at 505. Conversely, nonjudicial acts include other tasks, even though essential to the functioning of courts and required by law to be performed by a judge, such as: (1) selecting jurors for a county's courts; (2) promulgating and enforcing a code of conduct for attorneys; and (3) making personnel decisions regarding court employees and officers. *Id.*

[25] We note that there is some authority for granting prospective judicial relief against a judicial officer to prevent him from exceeding his authority in the future. *See Twilligear,* 148 S.W.3d at 504 n.8 (recognizing that judicial immunity is not a bar to *prospective injunctive* relief against a judicial officer acting in a judicial capacity or to attorney's fees for obtaining such relief (citing *Pulliam v. Allen,* 466 U.S. 522, 542–44, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984)); *see generally Gattis v. Duty,* 349 S.W.3d 193, 204 (Tex. App.—Austin 2011, no pet.) (recognizing that a claimant may only sue a government official in his official capacity for prospective injunctive or declaratory relief to restrain the official from exceeding statutory authority). As explained above, however, although Appellants sought to restrain Judge Woodard from imposing illegal fees in jury contempt cases in the future, they have not set forth any facts that would indicate that Judge Woodard is continuing to impose "illegal" fees or costs in such cases, and instead, the true focus of their lawsuit centers on the allegation that Judge Woodard's past actions were illegal. An allegation of past wrongful conduct cannot serve as the basis for an ultra vires action against a judicial officer. *See Roy v. Shannon*, No. 02-13-00238-CV, 2014 WL 4105271, at *3 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.) (mem. op., not designated for publication) (trial court properly dismissed ultra vires action against prosecutor and judge for alleged constitutional violations that occurred during his criminal trial, where he only sought relief for

*e.g., Delk v. Lehmberg*, No. 03-12-00678-CV, 2014 WL 1910314, at *2 (Tex. App.—Austin May 9, 2014, no pet.) (mem. op., not designated for publication) (holding that judicial officers, including judge and prosecutor, were entitled to judicial immunity in an ultra vires action, in which the plaintiff alleged his constitutional rights had been violated); *Smith v. Dist. Attorney Office for Wood County*, No. 03-13-00220-CV, 2014 WL 5420536, at *3 (Tex. App.—Austin Oct. 24, 2014, pet. denied) (mem. op., not designated for publication) (trial court properly dismissed plaintiff's ultra vires claims against prosecutor and judge for allegedly violating his rights during a criminal trial, as both individuals were entitled to judicial immunity for their actions as judicial officers).

In the present case, Appellants have already conceded that Judge Woodard was entitled to judicial immunity for his actions, we therefore do not revisit that issue in any detail. We do note, however, that Judge Woodard was clearly acting in his judicial capacity when he held contempt hearings and when he entered contempt judgments assessing fines and court costs, as those are all acts normally performed by judges. *See, e.g*., TEX. GOV'T CODE ANN. § 62.0141 (West 2013) (authorizing a judge to hold a person in contempt who does not comply with a jury summons); TEX. CODE CRIM. PROC. ANN. art. 42.15 (West 2006 & Supp. 2017) (requiring judgments in criminal cases in which only a fine is imposed, to include an order directing the defendant to "pay

---

allegedly wrongful "acts and omissions" already committed); *Delk,* 2014 WL 1910314, at *2 (dismissing plaintiff's ultra vires claim where plaintiff only sought a declaration that past conduct of judge and prosecutor in his criminal case violated his constitutional rights, and plaintiff did not attempt to restrain any future unconstitutional conduct); *Higgins v. Blount,* No. 07-12-00093-CV, 2013 WL 2244118, at *3 (Tex. App.—Amarillo May 17, 2013, pet. denied) (mem. op., not designated for publication) (upholding dismissal of inmate's suit against judge and assistant district attorney for errors in criminal trial and explaining that because inmate "ultimately seeks relief for acts he believes were already committed, the ultra vires exception does not apply to the facts of this case"); *Hailey v. Glaser,* No. 06-12-00065-CV, 2012 WL 5872869, at *3 (Tex. App.—Texarkana Nov. 21, 2012, no pet.) (mem. op., not designated for publication) (upholding dismissal of inmate's suit against judge, district attorney, and district clerk for actions taken in course of criminal trial, concluding that inmate's request for declaration that past acts violated law is not claim for prospective declaratory relief).

the amount of the fine and all costs to the state"); *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014) (noting that the Texas Code of Criminal Procedure requires that a court's judgment include an order that the defendant pay court costs when punishment is by fine only). Moreover, we decline to find that Judge Woodard was acting in the absence of all authority. As Appellants' own pleadings establish, Judge Woodard was presiding over the juror contempt cases, acting at the behest of Judge Ables and the other El Paso County Judges who "transferred" or "referred" the contempt cases to Judge Woodard to handle. Those judges clearly would have had judicial immunity for their actions in holding potential jurors in contempt, and by delegating that authority to Judge Woodard, Judge Woodard was, at the least, entitled to "derived" judicial immunity in handling those cases. *See generally Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002) (the policy reasons for judicial immunity are also implicated when a judge delegates or appoints another person to perform services for the court or when a person otherwise serves as an officer of the court, and therefore the immunity attaching to the judge follows the delegation, appointment or court employment); *see also City of Houston v. Swindall*, 960 S.W.2d 413, 417 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (citing *Clements v. Barnes*, 834 S.W.2d 45, 46 (Tex. 1992)). Therefore, even if Judge Woodard's contempt hearings did not conform to due process standards, and even if the costs he imposed were not authorized by law, he was still entitled to absolute judicial immunity for those actions. *See, e.g., Harry v. Lauderdale County*, 212 Fed. Appx. 344, 347 (5th Cir. 2007) (finding that judge was entitled to immunity for wrongfully holding plaintiff in contempt).

More importantly, we note that Judge Woodard has already been dismissed from this lawsuit with prejudice and with Appellants' consent, and we therefore conclude that Appellants

may not rely on this "ghost" defendant as the proper official in support of their ultra vires claim. As Appellants have not named any other governmental official who acted in an ultra vires manner, this claim must fail as a matter of law.

## APPELLANTS' "TAKINGS" CLAIM

In their amended pleadings, Appellants attempted to add a claim for "unlawful taking of property," arguing that the facts supported a conclusion that the "County intentionally charged and collect[ed] [Appellants'] money for public use," citing *Dalon v. City of DeSoto*, 852 S.W.2d 530, 537-38 (Tex. App.—Dallas 1992, writ denied). Although not entirely clear, this claim appears to be based on the argument that the County took Appellants' property (i.e., their money) in violation of the "takings" clause found in Article I, Section 17 of the Texas Constitution. This Constitutional provision provides that, "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and only if the taking, damage, or destruction is for: (1) the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by: (A) the State, a political subdivision of the State, or the public at large; or (B) an entity granted the power of eminent domain under law; or (2) the elimination of urban blight on a particular parcel of property." TEX. CONST. art. 1, § 17 (amended 2009). A "takings" claim under the Constitution consists of three elements: "(1) an intentional act by the government under its lawful authority, (2) resulting in a taking, damaging, or destruction of the plaintiff's property, (3) for public use." *City of El Paso v. Mazie's, L.P.*, 408 S.W.3d 13, 19 (Tex. App.—El Paso 2012, pet. denied) (citing *Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001)); *see also City of El Paso v. Ramirez,* 349 S.W.3d 181, 186 (Tex. App.—El Paso 2011, no pet.). In a claim for a "taking" under the Constitution, the

33

governmental entity against whom the claim is brought is not entitled to immunity. *See City of Socorro v. Campos*, 510 S.W.3d 121, 126 (Tex. App.—El Paso 2016, pet. denied) (citing *Little–Tex Insulation*, 39 S.W.3d at 598) (governmental immunity "does not extend to takings, whether outright or by damage or destruction of property"); *see also Spease v. Olivares*, 509 S.W.3d 512, 520 (Tex. App.—El Paso 2016, no pet.) (recognizing that, as a general proposition, a takings claim is an exception to sovereign immunity). However, we agree with the County that Appellants cannot state valid claim for relief of a constitutional "taking" under these facts.

The Supreme Court long ago declared that the Texas constitutional prohibition against the governmental taking of private property without just compensation "has reference *solely* to the exercise of the right of eminent domain ... [emphasis added]." *State ex rel. Pan Am. Prod. v. Texas City,* 157 Tex. 450, 303 S.W.2d 780, 782 (1957) (involving the levy of a tax). As our sister court recently recognized, the improper assessment of a court cost is not "an exercise in what we commonly know to be eminent domain," and is instead akin to a "levy of a tax." *See Denton v. State*, 478 S.W.3d 848, 851–52 (Tex. App.—Amarillo 2015, pet ref'd); *see also Merrill v. Carpenter*, 867 S.W.2d 65, 68-69 (Tex. App.—Fort Worth 1993, writ denied) (holding, in part, that the assessment of a fee by county commissioners was not a taking under Article I, Section 17 because the fees were not incident to a public works project). Therefore, a claim that a court cost was improperly imposed falls outside the scope of the takings clause. *Denton,* 478 S.W.3d at 851-52; *see also Spease,* 509 S.W.3d at 520 (noting that a judge's rulings, which caused plaintiffs to lose property, including bonding fees, did not amount to a taking under the Texas Constitution, pointing out that, "were it otherwise, every judge who ever entered an adverse judgment against a party would be subject to a takings claim, because most judgments divest a person of either

34

property or liberty"). Accordingly, we conclude that Appellants had no valid "takings" claim against the County for which its immunity was waived.

**APPELLANTS' SECTION 1983 CLAIM**

For the first time on appeal, Appellants argue that they have a viable claim against the County under the Civil Rights Act, found in 42 U.S.C. § 1983, "based on the fines and court costs Defendants County of El Paso and Judge Woodard had collected from [them]." Although not clearly explained, this claim appears to be based on the allegation that Judge Woodard "act[ed] under color of law" when he allegedly took their property, i.e., their money, without authority to do so.

The County responds by pointing out that Appellants not only failed to plead a 1983 claim in their Petition, but also failed to request permission from the trial court to amend their petition to add such a claim. The County therefore argues that Appellants waived their right to raise this issue on appeal, citing Rule 33.1 of the Texas Rules of Appellate Procedure.[26] Appellants, however, believe that they set forth adequate facts in their pleadings to support this claim, and that they should be given the opportunity to amend their pleadings to expressly state this cause of action, despite their failure to do so earlier. We disagree.

The Civil Rights Act provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

---

[26] Rule 33.1 provides that, "As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion that: (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" *See* TEX.R.APP P. 33.1.

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983. Thus, there are two essential elements to a Section 1983 action: "(1) the conduct in question must be committed by a person acting under color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or the laws of the United States." *See Rodarte v. Beneficial Texas. Inc.,* SA-16-CA-71-RP, 2016 WL 1312637, at *6 (W.D. Tex. Apr. 4, 2016) (citing *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, ––– U.S. ––––, 134 S.Ct. 1935, 188 L.Ed.2d 960 (2014)). However, it is well established that a judge has judicial immunity from a lawsuit brought under Section 1983, and therefore cannot be named as the "person" who violated the plaintiff's constitutional rights, when the lawsuit is based on the judge's judicial actions. *See Mireles v. Waco*, 502 U.S. 9, 13, 112 S.Ct. 286, 289, 116 L.Ed.2d 9 (1991); *see also Brown v. United States Postal Inspection Serv.,* 206 F.Supp.3d 1234, 1253 (S.D. Tex. 2016) (county judges were entitled to absolute judicial immunity in a Section 1983 action, where the plaintiff's complaint related to their actions or inactions with respect to their judicial duties); *Mays v. Sudderth*, 97 F.3d 107, 111 (5th Cir. 1996) (recognizing that absolute immunity applies to the judicial acts of judges acting within their jurisdiction even in suits brought pursuant to 42 U.S.C. § 1983); *Calton v. Schiller*, 498 S.W.3d 247, 252 (Tex. App.—Texarkana 2016, pet. denied) (recognizing the application of judicial immunity to 1983 lawsuits); *Kennedy v. Staples*, 336 S.W.3d 745, 752 (Tex. App.—Texarkana 2011, no pet.) (recognizing that absolute judicial immunity extends to civil rights cases when a judge acts in a judicial capacity). As set forth above, Appellants have already acknowledged that Judge Woodard was entitled to immunity for his actions, and have consented

to his dismissal from this lawsuit; as such, for purposes of bringing a 1983 lawsuit, Judge Woodard cannot be considered the "person" who violated Appellants' rights.

In addition, although a county may be named independently as a "person" in a Section 1983 lawsuit, a county may only be held liable in such a suit if the plaintiffs are able to demonstrate that the county had an "official policy or custom" that caused them to be subjected to a denial of a constitutional right. *See McWilliams v. Miller,* 5:08CV86, 2008 WL 2810871, at *2–3 (E.D. Tex. July 21, 2008) (citing *Williams v. Kaufman County,* 352 F.3d 994, 1013 (5th Cir. 2003)); *see also Spencer v. City of Seagoville*, 700 S.W.2d 953, 955 (Tex. App.—Dallas 1985, no writ) (citing *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983) (discussing city's liability under the same standard)); *see also Brown,* 206 F.Supp.3d at 1253 (county could not be held "vicariously liable" under §1983 for judges' actions; instead, county could only be held liable upon a showing that it caused injury to the plaintiff by its own actions, and by means of an official policy or widespread custom, known to the county's official policy maker). In other words, "only when the execution of a county's policies or its customs deprives an individual of constitutional or federal rights, does liability under Section 1983 result." *McWilliams*, 2008 WL 2810871, at *2-3. (citing *Colle v. Brazos County, Texas,* 981 F.2d 237, 244 (5th Cir. 1993)); *see also Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 415, 117 S.Ct. 1382, 1394, 137 L.Ed.2d 626 (1997).

In the present case, Appellants have not alleged in their current pleadings that the County had any policy or custom that deprived them of their federal constitutional rights. Instead, as explained above, Appellants only accuse Judge Woodard of violating their "due process" rights, and do not allege any facts that would suggest the County had any responsibility for those alleged

violations. There is nothing in the pleadings or the record to suggest that Judge Woodard was executing any county policies in doing so, and to the contrary, the record indicates that he was simply engaging in judicial functions over which the County had no control. In the absence of any pleadings alleging that the County had a custom or policy that deprived Appellants of their constitutional rights, we conclude that Appellants have not pled a valid 1983 claim against the County.

Having concluded that Appellants have failed to plead any valid claims for relief against the County for which its immunity was waived, Appellants' Issue Two in their brief is overruled.

### APPELLANTS' REQUEST TO AMEND

In Issue One in their brief, Appellants argue that even if their first amended petition did not state any claims for relief for which the County's immunity was waived, the trial court should have given them an opportunity to file a second amended petition to attempt to cure any jurisdictional defects before dismissing their lawsuit. They request that we therefore remand this matter to the trial court with instructions to give Appellants the opportunity to file a second amended petition. For the reasons set forth below, we decline to do so.

As a general rule, plaintiffs are entitled to an opportunity to amend their pleadings to attempt to cure jurisdictional defects contained in their pleadings. *See generally Texas A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 839 (Tex. 2007); *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002) ("[w]hen a plaintiff fails to plead facts that establish jurisdiction . . . the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend"); *see also Univ. of Texas at El Paso v. Esparza,* 510 S.W.3d 147, 154 (Tex. App.—El Paso 2016, no pet.). However, in the present case, Appellants were given a reasonable opportunity to amend their

38

petition after the County initially filed its Plea to the Jurisdiction, and Appellants did in fact file an amended petition in which they added two new causes of action against the County. Thereafter, the trial court found that none of the causes of action set forth in Appellants' amended petition stated a valid claim for relief for which the County's immunity had been waived, and it therefore granted the County's Plea to the Jurisdiction and dismissed Appellants' lawsuit in its entirety. As set forth above, Appellants did not request an opportunity to file a second amended petition after the trial court granted the County's Plea. Instead, they argue, in effect, that the trial court should have sua sponte given them this additional opportunity before dismissing their lawsuit.

As we have previously recognized, a trial court may dismiss a plaintiff's lawsuit with prejudice upon granting a governmental entity's plea to the jurisdiction if the trial court previously provided the plaintiff with "a reasonable opportunity" to amend his pleadings after the governmental entity filed its Plea, and the plaintiff's amended pleadings still did not cure the jurisdictional defect. *See Sepulveda v. County of El Paso*, 170 S.W.3d 605, 616–17 (Tex. App.—El Paso 2005, pet. denied); *see also Harris Cty. v. Sykes*, 136 S.W.3d 635, 639-40 (Tex. 2004) (where trial court allowed plaintiff to file an amended petition after the county filed its plea to the jurisdiction, after which the trial court found that the amended petition still did not raise a valid claim for which the county's immunity was waived, the trial court properly dismissed the plaintiff's claims with prejudice). Therefore, as Appellants were already given an opportunity to amend their petition after the County filed its Plea, the trial court did not err by dismissing Appellants' petition when their amendment proved unsuccessful.

Moreover, as noted above, Appellants never requested the opportunity to file a second amended petition in the trial court, and they are therefore arguing that the trial court should have,

39

in effect, sua sponte give them an opportunity to file a second amended petition before dismissing their complaint. Even if the better practice would have been for the trial court to give Appellants the opportunity to amend their petition a second time before dismissing their complaint, we note that Appellants did not raise this complaint in the trial court, such as through the filing of a motion for new trial, and they are instead raising this issue for the first time on appeal. We therefore agree with the County that Appellants failed to preserve this issue for appeal. *See generally* TEX.R.APP.P. 33.1; *see also Tara Partners, Ltd. v. City of S. Houston,* 282 S.W.3d 564, 578 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding that appellants forfeited the opportunity to amend their petition by failing to seek permission to amend after the trial court found the City's plea to the jurisdiction meritorious); *see also Hunt v. City of Diboll*, ___ S.W.3d __, No. 12-17-00001-CV, 2017 WL 7663041, at *14 (Tex. App.—Tyler Nov. 8, 2017, pet. filed) (plaintiffs forfeited the opportunity to amend their petition through "inaction" by failing to request an opportunity to amend after the trial court granted the City's plea to the jurisdiction); *Swain v. Hutson*, No. 02-11-00119-CV, 2011 WL 6415118, at *7 (Tex. App.—Fort Worth Dec. 22, 2011, no pet.) (mem. op., not designated for publication) (holding that the plaintiff waived his opportunity to cure the jurisdictional deficiencies in his pleadings when he failed to request permission to amend his petition after the trial court granted the government employees' plea to the jurisdiction).

And finally, even if we were to consider this issue on appeal, Appellants would have to convince us that they could in fact amend their petition to state a valid claim against the County for which its immunity was waived before we would conclude that they were entitled to have their case remanded to the trial court for further proceedings. *See, e.g., Haddix v. Am. Zurich Ins. Co.,* 253 S.W.3d 339, 347 (Tex. App.—Eastland 2008, no pet.) (even if "better practice" would have been

40

for the trial court to specifically allow plaintiff the opportunity to amend when granting a plea to the jurisdiction, the trial court's failure to do so did not constitute reversible error, where plaintiff failed to request the opportunity to amend in the trial court, and did not advise either trial court or appeal court of how he could amend his petition to cure jurisdictional defects); *see also Zumwalt v. City of San Antonio*, No. 03-11-00301-CV, 2012 WL 1810962, at \*7-8 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op., not designated for publication) (even if the "better practice" would have been for the trial court to sua sponte give the plaintiff the right to amend his petition, the plaintiff had not, in any event, described any proposed amendments that convinced the Court that the plaintiff could cure the jurisdictional defects in its original petition). Appellants, however, have failed to describe any proposed amendments to their petition that would convince this Court that they could cure the jurisdictional defects in their pleadings on remand. As such, we conclude that the trial court did not commit reversible error when it dismissed Appellants' lawsuit without giving Appellants the opportunity to file a second amended petition.

Appellants' Issue One is overruled.

## CONCLUSION

We affirm the trial court's judgment granting the County's Plea to the Jurisdiction and dismissing Appellants' lawsuit.

YVONNE T. RODRIGUEZ, Justice

July 26, 2018

Before McClure, C.J., Rodriguez, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment

41